Eustacio **ALVARADO,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–88–00021–CR.

Court of Appeals of Texas,
San Antonio.

Aug. 23, 1989.
Discretionary Review Refused
Nov. 22, 1989.

C. David Evans, San Antonio, for appellant.

Fred G. Rodriguez, Mary Roman, Diane Cruz, Edward Shaughnessy, III, Crim. Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and REEVES and CHAPA, JJ.

PER CURIAM.

Appellant, Eustacio Alvarado, was convicted by a jury of aggravated sexual assault of a child. The court assessed punishment at five years' confinement. We reverse.

The issues before us are:

1) whether the trial court committed reversible error in allowing a counselor to testify to hearsay statements made by the complainant;

2) whether the trial court committed reversible error in allowing the complainant's mother to testify to hearsay statements made by the complainant;

3) whether the trial court committed reversible error in allowing the counselor to testify to hearsay statements about sexual abuse by appellant against the complainant's younger brother;

4) whether the trial court committed reversible error in allowing the complainant's mother to testify as to what she told appellant's mother and sister;

5) whether the trial court committed reversible error in admitting evidence of an extraneous act committed by appellant on the complainant; and

6) whether appellant was denied the effective assistance of trial counsel.

On March 10, 1986, the eight year old female complainant and her mother met with Morris Flanigan, a children's counselor at the Battered Women's Shelter. The complainant's mother requested the meeting because she suspected that her daughter had been sexually abused. During the interview, the complainant informed her mother and Flanigan, through the use of anatomically correct dolls, how appellant had forced her to engage in oral sex. Appellant was her stepfather at the time. The complainant's seven year old brother was then brought into the room. He told Flanigan that he had been present when his sister had appellant's penis in her mouth and indicated that he had done the same thing with appellant.

The State timely filed a "Notice of Intent To Present Outcry Statement" pursuant to TEX.CODE CRIM.PROC.ANN. art. 38.072 (Vernon Supp.1988).[1] The notice listed

---

1. Article 38.072 provides:

Sect. 1. This article applies to a proceeding in the prosecution of an offense under any of the following provisions of the Penal Code, if committed against a child 12 years of age or younger:

(1) Chapter 21 (Sexual Offenses) or 22 (Assaultive Offenses);
(2) Section 25.02 (Incest);
(3) Section 25.06 (Solicitation of a Child, added by Chapter 413, Acts of the 65th Legislature, Regular Session, 1977); or
(4) Section 43.25 (Sexual Performance by a Child).

Sect. 2. (a) This article applies only to statements that describe the alleged offense that:

(1) were made by the child against whom the offense was allegedly committed; and
(2) were made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense.

(b) A statement that meets the requirements of Subsection (a) of this article is not inadmissible because of the hearsay rule if:

(1) on or before the 14th day before the date the proceeding begins, the party intending to offer the statement:

(A) notifies the adverse party of its intention to do so;

Flanigan as the witness who would offer the complainant's statements.

In his initial point of error, appellant contends that the trial court committed reversible error in allowing Flanigan to testify to the hearsay statements made by the complainant during the interview.

Statements which meet the requirements of article 38.072 are admissible. TEX. CODE CRIM.PROC.ANN. art. 38.072. This record does not show that Flanigan was, as required by § 2(a)(2), "the first direct person, 18 years of age or older, to whom the child made a statement about the offense." Further, the record discloses that the trial court made no findings concerning the reliability of the child's statement to Flanigan as required by § 2(b)(2). Therefore, the requirements of art. 38.072 were not met.

■ However, because appellant's counsel failed to object and request a finding, appellant cannot complain of the admission of Flanigan's "outcry" testimony from complainant. Tex.R.App.P. 52(a); *See Martinez v. State*, 732 S.W.2d 401 (Tex. App.—Houston [14th Dist.] 1987, no pet.). The point is rejected.

■ In his next point of error, appellant contends that the trial court committed reversible error in allowing the complainant's mother to testify to hearsay statements made by the complainant during the interview with Flanigan.

The complainant's mother testified as follows about the events which transpired during the interview with Flanigan:

MS. ROMAN (Prosecutor):

Q: Now, would you please tell the jury how Ida was sexually abused, what did she tell you?

MR. OXFORD (Defense Attorney): If I may, Your Honor, the other witness has testified as to what the child told during this meeting. Anything outside of the meeting would, of course, be hearsay and I am sure the child would testify as to that. I will object to her testimony on that.

THE COURT: Overruled, counsel.

MS. ROMAN: Go ahead.

QUESTIONS BY MS. ROMAN:

A: She said she had to suck on his penis. And—

Q: Did she actually say those words?

A: No.

Q: How did she tell you that this had happened?

A: She said, mommie, he made me put his peepee in my mouth.

Q: When she was talking to Mr. Flanigan was she having a hard time telling him what had happened?

A: Yes.

Q: Did she actually tell him or did she demonstrate what was going on?

A: I think she told him.

Q: Did she use dolls?

A: I don't recall having dolls at the shelter.

Q: Okay. When you were talking to Mr. Flanigan, were you in the room all the time that [the complainant] was talking to Mr. Flanigan?

A: No.

Q: Okay. And did you see [the complainant] demonstrate with the doll what she was required to do with the defendant?

A: Yes.

Q: And what did she do with those dolls?

A: She demonstrated how he had made her have oral sex with him.

Q: Tell the jury what she did with that doll?

A: She put the girl down to the man's organs and she said that her mouth, she had, that she had to put his organs into her mouth.

(B) provides the adverse party with the name of the witness through whom it intends to offer the statement; and

(C) provides the adverse party with a written summary of the statement;

(2) the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement; and

(3) the child testifies or is available to testify at the proceeding in court or in any other manner provided by law.

The testimony of what the complainant's mother saw and heard at the interview was inadmissible under TEX.R.CRIM.EVID. 801. However, appellant's counsel clearly failed to object to anything that took place at the Flanigan interview, and waived any complaint. Tex.P.App.P. 52(a); *Martinez v. State, supra.* Further, the objection of "hearsay" to anything outside the interview was too general and preserved nothing to review. *Barnard v. State,* 730 S.W.2d 703, 716 (Tex.Crim.App.1987) *cert. denied* — U.S. ——, 108 S.Ct. 1098, 99 L.Ed.2d 261 (1988); *Lewis v. State,* 664 S.W.2d 345 (Tex.Crim.App.1984). The point is overruled.

■ In his third point of error, appellant contends that the trial court committed reversible error in allowing Flanigan to testify to hearsay statements about sexual abuses by appellant against the complainant's brother during the interview. The record, however, reflects that no objection was made when the testimony of sexual abuse by appellant against the complainant's younger brother was first presented. Later, when an objection was made, the court sustained appellant's objection, but appellant did not request that the jury be instructed to disregard the testimony. Appellant received all the relief that he requested and therefore nothing is preserved for review. *Darty v. State,* 709 S.W.2d 652 (Tex.Crim.App.1986) (en banc).

In his fourth point of error, appellant contends that the trial court committed reversible error in allowing the complainant's mother to testify as to what she told appellant's mother and sister. On appeal, appellant insists initially that this statement is inadmissible as hearsay.

The complainant's mother testified as follows:

Q: Okay. Now Ms. Martinez, did you go to his sister, either Mercedes or La La, and tell them at one point that [appellant] had sexually abused [the complainant]?

A: When I first got here to San Antonio, yes.

[APPELLANT'S COUNSEL]: Your Honor, this is not relevant to the issue.

THE COURT: Overruled, counsel.

Q: Let's just talk about whether or not you talked to the sisters, okay? Did you tell them that you believed [the complainant] had been sexually abused.

A: I specifically told his mother and his sister.

Q: Which sister?

A: La La.

Q: La La?

A: Yes.

Q: When you told La La, what was her response to you?

A: She was shocked and she said that I should not tell anyone.

Q: Did she say anything else?

A: No.

We immediately note that the complaint on appeal does not comport with the objection made at trial. Therefore, nothing is preserved for review. *Gardner v. State,* 733 S.W.2d 195 (Tex.Crim.App.1987) (en banc), *cert. denied,* — U.S. ——, 109 S.Ct. 848, 102 L.Ed.2d 979 (1989).

Appellant also contends however, that the evidence was irrelevant and the error was preserved. We agree, but whether this error is reversible will depend on the application of TEX.R.APP.PROC. 81(b)(2). We will address this point together with the final point of error.

In his fifth point of error, appellant contends that the trial court committed reversible error in admitting evidence of an extraneous act committed by the appellant on the complainant child.

The complainant testified as follows:

Q: Okay. When you were in Nebraska, did something happen to you as far as Joe is concerned?

A: Yes.

[APPELLANT'S COUNSEL]: Your Honor, I will have to object. I don't understand what Nebraska has to do with this case, they don't have their case here in Texas and now they are trying to prove something else.

[PROSECUTOR]: We will object to the testimonial. If counsel wants to argue we ask the jury—

THE COURT: I am going to overrule the objection. Get on with it.

Q: Okay. Now, [the complainant], when you were in Nebraska, would you please tell this jury what [appellant] did to you?

A: He put his peepee in my mouth.

In *Boutwell v. State*, 719 S.W.2d 164 (Tex.Crim.App.1986) (On rehearing), the Court of Criminal Appeals "continue[d] to recognize a narrow exception for sex offenses to permit admission of similar extraneous sex offenses which occurred between the minor complainant and the accused." The point is overruled.

In his final point of error, appellant contends that he was denied the effective assistance of counsel.

In reviewing a claim that trial counsel's assistance was so defective as to require reversal, we must apply the standard established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Hernandez v. State*, 726 S.W.2d 53 (Tex.Crim.App.1986) (en banc). Appellant must first show that trial counsel's representation fell below an objective standard of reasonableness. Second, the accused must show that this deficient performance prejudiced the defense. To demonstrate prejudice, appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d 674.

Appellant has enumerated sixteen instances wherein he argues trial counsel's representation was ineffective "in allowing, or even introducing, harmful testimony into evidence." The most critical of the complaints concern trial counsel's failure to object to inadmissible testimony of Flanigan, complainant's mother, and Dr. Stephens, and in failing to request an instruction to disregard inadmissible evidence from Flanigan as to appellant's sexual abuse of complainant's younger brother.

In addition to all the heretofore discussed damaging evidence permitted because of appellant counsels inadequate representation, appellant's counsel also failed to object to certain testimony of Dr. George Stephens. Dr. Stephens testified as follows:

Q: And did you get an opportunity to speak to [the complainant] herself?

A: Yes, I did.

Q: Okay. What did she tell you?

A: She told me that everyday just about, after school, she was coerced, she didn't use the term coerce, but everyday after school she sucked her stepfather's penis. And that he would then take the penis out of her mouth and sometimes something would squirt out of it.

Without a doubt, appellant counsel's representation fell below an objective standard of reasonableness, and substantially prejudiced the defense. The ultimate question then is whether appellant has shown that "there is reasonable probability, that, but for counsel's unprofessional errors, the result of the proceeding would have been different[?]" *Strickland v. Washington, supra.*

When the inadmissible evidence is disregarded, the remaining evidence consists primarily of the testimony of the complainant and her younger brother, which is a very small part of this record.

The complainant had some difficulty in answering questions. On several occasions, when even leading questions elicited no answer from her, the prosecutor asked, "Can you say yes?," and the complainant promptly answered, "Yes." Whether the "yes" was to the question asked concerning the offense or to the query concerning her ability to say "yes" is not clear.

Complainant had some difficulty in recalling details of appellant's abusive conduct. Although she testified that the sexual abuse had occurred more than once and that on several occasions Pete had witnessed the abuse, she could not say when the incidents occurred. Pete, complainant's younger brother, testified that he had witnessed only one incident.

The Court of Criminal Appeals has characterized the evidence of a minor complainant in sexual cases as "inherently questionable." *Boutwell v. State,* 719 S.W.2d 164, 178 (Tex.Crim.App.1985). It is this "inherently questionable" nature of the child's testimony which furnishes the basis for admission of evidence of sexual acts between defendant and the minor complainant. *Id.* 719 S.W.2d at 178.

■ The hearsay testimony of Flanigan concerning the sexual abuse of Pete by appellant, absent a request for an instruction to disregard, cannot be brushed aside as being without effect. The testimony is patently inadmissible, without reference to its hearsay nature. Evidence of extraneous sexual offenses is limited to evidence of extraneous sexual conduct between the defendant and the minor complainant. Evidence of extraneous sexual conduct between defendant and a person other than the complainant is not admissible. *Boutwell v. State, supra* at 178; *Morgan v. State,* 692 S.W.2d 877, 882 (Tex.Crim.App. 1985). *Boutwell* recognized that evidence of prior sexual offenses between defendant and one other than the complainant would create overwhelming prejudice. "The danger is too great that juries would convict on character evidence of this type.... In sex cases this prejudice is even more pronounced." *Boutwell v. State, supra* at 177. It is never easy to justify a holding that inadmissible evidence does not create a reasonable probability that the outcome of the case was affected, when that evidence creates overwhelming prejudice and "too great" a danger that juries would convict on the basis of such propensity evidence.

Without a proper objection from appellant's counsel, complainant's mother was permitted to testify to the statements made by complainant to Flanigan. This testimony clearly served to bolster the testimony of both Flanigan and complainant. While it is true that the mother's testimony was almost identical to that of Flanigan, this quality is almost always characteristic of corroborative testimony, and cannot be regarded as superfluous. Such bolstering of a witness is not permissible. TEX.R. CRIM.EVID. 612(c).

Further, over appellant's objection, complainant's mother was permitted to testify that she told appellant's mother and sister that she believed that appellant had sexually molested complainant. She further testified that the sister told her that she "should not tell anyone." Appellant's mother responded that a "marriage was through thick and thin." The appellant's mother added that complainant's mother "had not stood up as a woman" and should stay with appellant and "make sure that he received counseling help."

This testimony not only served to show prior consistent statements by complainant's mother but clearly left the impression that appellant's mother and sister believed that appellant had sexually abused the child and sought to insure that complainant's mother should not repeat the charges to others.

■ In this case the jury was exposed to a barrage of inadmissible testimony which greatly exceeded the properly admitted evidence pointing to appellant's guilt. The erroneous admission of so much hearsay testimony can only be characterized as fundamentally unfair.

The State contends that the errors of the trial court and appellant's counsel are harmless because there is overwhelming evidence of appellant's guilt and the errors beyond a reasonable doubt made no contribution to the conviction. TEX.R.APP. PROC. 81(b)(2).

Use of the overwhelming evidence test creates serious problems which cannot be completely obscured by a careful donning of a judicial blindfold. When an appellate court examines the record for "overwhelming evidence" of defendant's guilt, it must use its own judgment to assess the weight of the evidence which we are repeatedly reminded not to do. When a reviewing court proceeds in this fashion, it is in danger of usurping the function of the jury, because it is clearly possible that a jury might have weighed the evidence differently. When an appellate court affirms a conviction and such affirmance is based

entirely on the court's own evaluation of the evidence of guilt, the defendant may twice be the victim of unfairness: first at trial and then on appeal.

It may be admitted that when the record contains only evidence properly admitted, an appellate court may with some degree of confidence conclude that the evidence supports a finding of guilt beyond a reasonable doubt. But no court has thus far satisfactorily explained the process by which it is possible to assert that, beyond a reasonable doubt, a jury disregarded evidence which it should not have been allowed to consider. The reason for the lack of even an attempted explanation should be obvious. It is difficult to determine what evidence influenced the jury in reaching a criminal verdict, without such a judicial incursion into the mental processes of jurors.

Whether the jury was allowed to consider the improper testimony because of trial counsel's failure to object, or because an objection was erroneously overruled, or because trial counsel, after successfully objecting, did not seek to have the jury instructed to disregard, is in this case irrelevant. We do not have before us a case in which only a relatively small bit of evidence was improperly admitted. Here, the amount of evidence which the jury was improperly allowed to consider may be easily described as "overwhelming."

We therefore conclude that not only is there a reasonable probability that, but for appellant counsel's unprofessional errors, the result of the prosecution would have been different, but we likewise cannot say that beyond a reasonable doubt, the errors made no contribution to the conviction.

The judgment is reversed and the cause is remanded.