David Michael KUCEL, Appellant

v.

The STATE of Texas, Appellee.

No. 01–93–00446–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Sept. 7, 1995.

Rehearing Overruled Sept. 28, 1995.

John B. Holmes, Ernest Davila, and Marie Munier, Houston, for appellee.

Before WILSON, MIRABAL, and DUGGAN,* JJ.

## OPINION

WILSON, Justice.

Appellant, David Michael Kucel, appeals his convictions for two counts of aggravated sexual assault of a child. A jury found appellant guilty of both counts and assessed punishment for each offense at 30–years confinement and a $10,000 fine.

In two points of error, appellant argues he was denied effective assistance of counsel because his trial counsel failed to object to what appellant contends was inadmissible evidence offered by the State, and because trial counsel failed to object to a misstatement of the parole law in the jury charge. We reverse and remand for a new punishment hearing.

## SUMMARY OF FACTS

Appellant was charged with two counts of aggravated sexual assault of a child. The complainant[1] is the seven-year-old daughter of appellant's former girlfriend, Debbie. At the time appellant was charged, he was living with the complainant's mother, her other children, Heather and Jody, and the complainant. Appellant entered a plea of not guilty to each count, and a jury trial was conducted beginning on May 11, 1993.

The complainant testified during the State's presentation of its case. She was unable to identify appellant in court, but she did state that appellant had lived with her and her mother. The complainant testified appellant tied her up on a wall. She testified appellant had pulled down his pants, touched her, made her put her mouth on his sexual organ, penetrated her with his finger, and

Bob C. Hunt, Houston, for appellant.

---

* Justice Duggan, who retired December 31, 1994, continues to sit by assignment for the disposition of this case, which was submitted prior to that date.

1. We do not refer to the complainant or her family members by full name because the complainant is a minor.

laid on top of her. The complainant often stated she did not remember particular incidents. The complainant also testified she felt sad when her mother did not believe her when she reported these incidents. On cross-examination, the complainant testified she wanted her mother and father to get back together, and had discussed this with her sister, Heather.

The complainant's 14–year–old sister, Heather, testified the complainant was often alone in the house with appellant. She testified the complainant often had nightmares and wet the bed. Heather stated the complainant told her something, and she reported this to her aunt. She then said her mother did not believe the complainant. On cross-examination, Heather testified she did not get along with appellant, and missed her natural father.

The complainant's step grandmother, Pat, testified for the State. She often cared for the children on the weekends. She testified the complainant was cranky and very emotional. The complainant also was restless at night, had frequent nightmares, occasionally wet the bed, and at times suffered urinary tract infections. Pat testified she saw the complainant engage in sex play she felt was inappropriate for a child the complainant's age. Her husband also testified similarly to the complainant's behavior.

Pat further testified she received a call from her sister-in-law that prompted her and one of the complainant's aunts to approach the child's mother, Debbie, about the complainant's allegations. The complainant's mother did not believe what she was told. Pat stated she later approached the mother with a tape recording of the complainant. The mother reacted with hostility. Later, Pat called the police and reported appellant. The children stayed with Pat after the incident was reported, and she reported the complainant continued to act in a manner she thought was sexually inappropriate for a child complainant's age, and was very emotional. Pat stated the complainant's behavior improved after therapy. Her husband, Ar-thur, also testified the complainant's behavior had improved.

Susan Testa, a caseworker for Children's Protective Services (CPS), also testified. She stated she explained the allegations to the mother, as well as the services the family could utilize. She testified Debbie did not believe the allegations and thought her older daughter, Heather, had told the complainant to fabricate the allegations. Testa also testified she spoke with Heather but did not believe Heather had put the complainant up to making the accusations. She had also discussed the allegations with appellant, and stated he denied the allegations. He agreed not to live with Debbie and the children anymore, but was not interested in counseling services. Testa testified the complainant made great progress with counseling.

Rosemary Nicholas, a psychotherapist, testified she treated the complainant and her mother. The complainant told the psychotherapist she had been sexually abused, and later proceeded to describe the alleged abuse in detail. Nicholas also testified that nightmares, sexually acting out, and being extremely emotional are symptoms consistent with child sexual abuse. The psychotherapist also treated the mother, and testified Debbie did not believe any abuse occurred.

Dr. Clifford Mishaw, a pediatrician who examined the complainant, testified that the complainant did not have physical symptoms of sexual abuse. He also testified that children who are sexually abused may suffer from urinary tract infections, but the condition is also generally common to children the same age and sex as complainant.

Appellant presented the complainant's mother, Debbie. She testified she did not believe any abuse had occurred. After she was confronted with the allegations of abuse, she left her children with Pat, her step mother. Debbie testified that the complainant, when asked about the alleged abuse, replied, "That was a dirty joke that Heather said."

Larry Joe Hensley, Lori Spellman, Charlie Hypes, Nancy Marie Hypes, William Robert

Kucel, Jean Marie Hypes Kucel, Deborah Richter, and Louella Joyce Blankenship each testified they had seen appellant with the children, and he did not behave inappropriately with them. They also testified appellant had a good relationship with the children.

Appellant testified he did not abuse the complainant. He also stated that when he was accused, Debbie asked him to move out, and he did so. He testified he was upset by the accusations.

This Court abated appellant's appeal and ordered the trial court to conduct a hearing on whether appellant received effective assistance of counsel at trial. Following a hearing on August 22, 1994, the trial court entered findings of fact and concluded that appellant did not demonstrate deficient performance of counsel.

## GUILT–INNOCENCE STAGE

In his first point of error, appellant alleges he was denied his federal and state constitutional right to effective assistance of counsel at the guilt-innocence stage of the trial when his attorney did not object to what appellant contends was inadmissible, highly prejudicial and inflammatory evidence offered by the State.

Specifically, appellant asserts that his trial counsel should have objected to:

(1) the prosecutor's questioning of defense witnesses about whether appellant hit Jody (the complainant's brother);

(2) Heather's testimony that appellant returned home drunk and passed out after having gone fishing all day;

(3) the prosecutor's questioning of appellant and appellant's witness, Debbie, about an alleged incident in which Debbie got on appellant's lap, spread her legs and told her children to leave the room;

(4) the prosecutor's questioning of Debbie about whether she had verbally abused her older daughter, Heather;

(5) the prosecutor's questioning of Debbie about whether she was told by Pat, the complainant's step grandmother, that the complainant had made allegations that appellant committed sexual acts against her;

(6) the CPS worker's testimony regarding her explanation to Debbie of the allegations that appellant had committed sexual acts against the complainant; and

(7) the CPS worker's testimony that appellant said he did not believe in counseling.

The proper standard to review a claim of ineffective assistance of counsel at the guilt-innocence stage of a trial was set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and was adopted by the Texas courts in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim.App.1986). *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex.Crim.App.1992). To obtain a reversal on the ground of ineffective assistance of counsel, an appellant must show (1) his counsel's performance was so deficient that counsel was not functioning at the level of competence guaranteed by the sixth amendment,[2] and (2) there is a reasonable probability that, but for counsel's deficient performance, the results of the proceedings would have been different. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Vasquez*, 830 S.W.2d at 949. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. Even when counsel's errors may qualify his performance as "deficient," if there is overwhelming evidence of an appellant's guilt, there may be no reasonable probability that the outcome of the proceeding would have been different. *Davis v. State*, 830 S.W.2d 762, 766 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd). In *Strickland*, the court stated:

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted

2. U.S. CONST. amend. VI.

defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

466 U.S. at 690, 104 S.Ct. at 2066.

■ In applying this standard, we must recognize the strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066; *Davis,* 830 S.W.2d at 765. An appellant has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Davis,* 830 S.W.2d at 765. Furthermore, trial counsel's assistance is not necessarily ineffective when counsel's actions could be deemed a strategic, albeit risky, decision. *See Delrio v. State,* 840 S.W.2d 443, 447 (Tex.Crim.App.1992).

■ In reviewing appellant's claim, we note he does not make a separate argument for each instance of alleged ineffective assistance, but argues the admission of so many of what he considers inadmissible statements is fundamentally unfair. However, appellant does not offer argument showing why any specific testimony would have been inadmissible after proper objection.

Appellant asserts trial counsel should have objected to the prosecutor's questioning of defense witnesses about whether appellant ever hit Jody, the complainant's brother. All of the witnesses questioned about this alleged incident answered in the negative. Counsel testified at the hearing that he did not object to the questions about this alleged incident because he wanted to show that the relationship between appellant and the children was characterized by hostility, that the children did not accept appellant in the role of disciplinarian, and that each child had an independent reason to dislike appellant and fabricate charges against him.

Appellant claims his trial counsel should have objected to Heather's testimony about an incident in which appellant allegedly returned home drunk and passed out after having gone fishing all day. Trial counsel stated Heather's testimony demonstrated relations between the children and appellant were hostile, and that Heather's statements about this alleged incident bolstered his strategy of showing the jury that the children hated appellant and would invent charges to get him out of the household.

Appellant argues trial counsel should have objected to the prosecutor's questioning of appellant and Debbie about an alleged incident in which she got on appellant's lap, spread her legs, and told her children to leave the room. Both appellant and Debbie answered in the negative. Trial counsel testified he was trying to show the jury that an extreme level of hostility existed between Heather and Debbie, and that this hostility between daughter and mother was fueled by Heather's belief that Debbie was more concerned about the success of her relationship with appellant than with her children.

Appellant contends trial counsel should have objected to the prosecutor's questioning of Debbie about whether she had verbally abused her older daughter, Heather. Debbie answered that she had not. Trial counsel testified he did not object to this line of questioning because he thought it further bolstered the defense theory that Heather resented her mother's attentions toward appellant, resented appellant's presence in the home and had a motive to support the complainant in fabricating the allegations against appellant.

Appellant asserts his trial counsel should have objected to (1) the prosecutor's questioning of Debbie regarding whether Pat, the complainant's step grandmother, told her of the allegations that appellant had committed sexual acts against the complainant, and to (2) the CPS worker's testimony regarding her explanation to Debbie of the complainant's allegations against appellant. Trial counsel testified he wanted the jury to see

Debbie answer the questions to observe her spontaneous reaction and to realize that she had consistently disbelieved the complainant's allegations throughout the entire process. Counsel for appellant felt the CPS worker's testimony about Debbie's reaction to the allegations would add support to this strategy and bolster the defense theory that complainant's allegations were fabricated.

Appellant claims trial counsel should have objected to the CPS worker's testimony that appellant told her he did not believe in counseling. Trial counsel stated the CPS worker's testimony was useful to show her recollections differed from those of appellant, who would testify later, and prepared the jury for appellant's testimony about his feelings toward, and his willingness to undergo, counseling. Trial counsel also believed the CPS worker's testimony showed the hostile and coercive environment appellant encountered from CPS, as well as CPS's predisposition to conclude appellant was guilty of the allegations.

Trial counsel explained he was willing to allow certain evidence to come in without objection in order to establish his theory that the complainant and the other children hated appellant to an extent they would fabricate allegations against him. He thought it would not have been credible to try to portray the family as happy, that it would have undermined the defense theory the allegations were invented, and that the jury should hear there were reasons for the children's hostility toward appellant and their mother.

Appellant relies on *Alvarado v. State,* 775 S.W.2d 851 (Tex.App.—San Antonio 1989, pet. ref'd), and *Doles v. State,* 786 S.W.2d 741 (Tex.App.—Tyler 1989, no pet.), as support for his contention that trial counsel's representation was ineffective.

In *Doles,* the court reversed a defendant's conviction for aggravated sexual assault of a child, and held trial counsel's assistance was ineffective because he did not object to numerous instances of oral and written testimony regarding the defendant's extraneous offenses involving children other than the com-

plainant. *Doles,* 786 S.W.2d at 747. *Doles* is distinguishable on its facts because in the instant case, no testimony in our case suggested that appellant committed any extraneous sexual offenses against anyone other than the complainant.

In *Alvarado,* the court also reversed a conviction for aggravated sexual assault of a child for ineffective assistance of trial counsel. In that case, trial counsel did not object either to hearsay testimony regarding a complainant's statements to various witnesses or to testimony of the defendant's extraneous sexual offenses committed against a second child. *Alvarado,* 775 S.W.2d at 857. By contrast, the prosecutor in the instant case was careful not to question the witnesses about the substance of hearsay statements by the complainant. Further, appellant's trial counsel objected when it appeared witnesses were about to testify to hearsay. We therefore consider *Alvarado* distinguishable on its facts.

In light of the defense strategy outlined by appellant's trial counsel, his explanation for the decisions not to object to certain testimony, and the strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment, we hold that the performance of appellant's counsel was not so deficient as to be functioning at a level of competence less than that guaranteed by the sixth amendment. Because we conclude appellant has not met the first prong of the *Strickland* test, we do not proceed to the second part of that analysis. We overrule appellant's first point of error.

## PUNISHMENT STAGE

■ In his second point of error, appellant argues he was denied effective assistance of counsel in the punishment stage of trial when his counsel waived objection to a misstatement of the parole law in the jury charge. Appellant contends his trial counsel misstated the parole law during argument and that he was harmed by the presence of this same misstatement in the jury charge. He claims trial counsel's subsequent waiver of objection to this misstatement in the charge also con-

stituted ineffective assistance and contributed to the jury's alleged improper consideration of the parole law and its application to appellant.

The test announced in *Strickland* applies only to a claim of ineffective assistance of counsel during the guilt-innocence stage of the trial, not the punishment stage. *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim. App.1987); *Ex parte Duffy*, 607 S.W.2d 507, 514 (Tex.Crim.App.1980); *Davis*, 830 S.W.2d at 765. We review the effectiveness of appellant's counsel at the punishment stage of trial by the standard of "reasonably effective assistance." *Cruz*, 739 S.W.2d at 58; *Davis*, 830 S.W.2d at 765. Under this standard the sufficiency of an attorney's assistance is gauged by the totality of the representation of the accused, and does not require errorless counsel or counsel whose competency is to be judged by hindsight. *Cruz*, 739 S.W.2d at 58. The "reasonably effective assistance" standard requires an appellant to show some act by counsel that would constitute ineffective assistance and to demonstrate, by a preponderance of the evidence, that he suffered harm as a result of the alleged ineffective assistance. *Moore v. State*, 694 S.W.2d 528, 531 (Tex.Crim.App.1985); *Stone v. State*, 751 S.W.2d 579, 582–83 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). *See also Stafford v. State*, 813 S.W.2d 503, 506 n. 1 (Tex.Crim. App.1991).

At the time of appellant's trial, the relevant portions of the statutory jury charge regarding parole and pertaining to the offense of aggravated sexual assault read as follows:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed *or 15 years*, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a

term of less than six years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

> . . . .

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.[3]

(Emphasis added.) The charge as originally drafted and read to the jury by the trial court accurately tracked the language of the statute. However, during closing argument at the punishment phase of the trial, appellant's counsel stated:

> [Y]ou are allowed to be informed that under the law that applies to this kind of case, anyone convicted of this kind of case [sic] will not become eligible for parole until the actual time served equals one-fourth of the sentence *or two years*, whichever is less.

(Emphasis added.)

After appellant's counsel concluded closing argument, the prosecutor approached the bench, and a discussion was held off the record between the trial court, the prosecutor and counsel for appellant. Following this bench conference, appellant's counsel addressed the jury and stated that the charge contained a printing error and would be changed to read as he had stated the law regarding parole in his closing argument. The charge was changed, and was subsequently submitted to the jury with the word "fifteen" crossed-out, and the word "two" handwritten above it. The judge initialed the change. The record indicates no other changes were made to the charge. Thus, as it was submitted to the jury, and as agreed to by both lawyers and the judge, the charge misstated the law regarding parole.

---

**3.** Act of May 17, 1989, 71st Leg., R.S., ch. 103, § 1, 1989 Tex.Gen.Laws 442, *amended by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 5.02, 1993 Tex.Gen.Laws 3586, 3746–47 (current version at Tex.Code Crim.P.Ann. art. 37.07, § 4(a) (Vernon 1995)).

During jury deliberation at the punishment phase of the trial, the trial court received a note from the jury, which read:

> May the jury decide if sentences are to be served consecutive [sic]. If so, is four years the minimum before parole would be considered[?]

The trial court did not respond to this question directly, but told the jury he received their note and instructed them to continue their deliberations.

Following the sentencing of appellant and the dismissal of the jury, the prosecutor informed the trial court that there was "some confusion" in the charge regarding the parole laws. Appellant's counsel stated the change made to the charge resulted in a misstatement of the law, but he then waived any objection to the misstatement because in his view any error in the language benefitted appellant rather than the State.[4] Appellant did not question trial counsel about this claim at the hearing on ineffective assistance of counsel.

We first examine appellant's assertion that he was harmed by the misstatement of the parole law his attorney persuaded the court to insert in the jury charge. The only evidence in the record suggesting the jury considered how the parole law would specifically affect appellant is the note sent to the trial court during deliberations. We may presume the misstatement in the charge was relied on by the jurors because it was present in the charge as submitted to them and was also the subject of their note. The question in the note indicates the jury definitely considered how the parole law would affect the sentence they were to impose on appellant, despite the trial court's admonitions to the contrary. From the tenor of the question it is also apparent the jury considered whether the punishments imposed for the two counts could be "stacked," so as to increase the minimum time appellant would have to spend in prison before becoming eligible for parole. It is therefore evident that in its deliberations at the punishment stage, the jury improperly considered how an incorrect statement of the parole law would apply to appellant. If, as it appears, the jury's concern was how to maximize the time appellant would have to spend in prison before becoming eligible for parole under what they believed was the correct parole law, then it is difficult to conclude appellant was not harmed. We conclude the jury note constitutes some evidence that appellant was harmed by the misstatement of law in the charge.

As previously noted, the standard of review for an ineffective assistance claim at this stage of trial requires an appellant to demonstrate harm by a preponderance of the evidence. We find no evidence in the record to support the contention that appellant was not harmed by the misstated parole law instruction. To conclude no harm was shown would require a reviewing court to determine the jury note constituted no evidence of harm to appellant. We hold appellant has met his burden and has demonstrated harm by a preponderance of the evidence based on these facts, and we conclude counsel rendered ineffective assistance at the punishment stage of trial. Accordingly, we sustain appellant's second point of error.

As our determination to sustain appellant's second point of error affects only the punishment phase of the proceedings conducted below, we reverse and remand to the trial court for a new punishment hearing. TEX. CODE CRIM.P.ANN. art. 44.29(b) (Vernon Supp.1995); *see Fullbright v. State,* 818 S.W.2d 808, 811 (Tex.Crim.App.1991).

---

4. We observe that because of the substitution of "two" for "fifteen" in the charge, trial counsel may have concluded the jury had less incentive to impose a sentence greater than eight years, because, as the charge incorrectly stated, appellant would be eligible for parole in two years, regardless of the sentence.