PD-0787-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 7/24/2015 10:29:05 AM
Accepted 7/24/2015 11:20:30 AM
ABEL ACOSTA
CLERK

**PD-0787-15**

IN THE TEXAS COURT OF CRIMINAL APPEALS

## JOSE MIGUEL GARCIA
*APPELLANT*

vs.

## THE STATE OF TEXAS
*APPELLEE*

FROM THE FIFTH COURT OF APPEALS
CAUSE NO. 05-13-01578-CR

APPEAL FROM CRIMINAL DISTRICT COURT NO. 2 OF
DALLAS COUNTY, TEXAS, CAUSE NO. F12-35086-I

# APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BRUCE ANTON
State Bar No. 01274700
ba@sualaw.com

BRETT E. ORDIWAY
State Bar No. 24079086
bordiway@sualaw.com

SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201
214-468-8100 (office)
214-468-8104 (fax)

*Counsel for Appellant*

FILED IN
COURT OF CRIMINAL APPEALS

July 24, 2015

ABEL ACOSTA, CLERK

## Ground for Review

Whether evidence that is merely legally sufficient to support a conviction necessarily indicates the conviction was "certain."

# Table of Contents

Ground for Review ..............................................................................................2

Index of Authorities............................................................................................ 4

Identity of Parties and Counsel .................................................................5

Statement Regarding Oral Argument.......................................................... 6

Statement of the Case and Procedural History ....................................... 7

Argument ..............................................................................................................9

    Evidence that is merely sufficient to support a conviction does not
    necessarily mean the conviction was certain. They are related, yet
    distinct, inquiries. .....................................................................................9

Prayer.................................................................................................................. 17

Certificate of Service ................................................................................... 19

Certificate of Compliance....................................................................... 19

Appendix .............................................................................................................. 20

# Index of Authorities

**Cases**

*Alvarado v. State*, 775 S.W.2d 851, 857 (Tex. App.—San Antonio 1989, pet. ref'd)................................................................................ 13

*Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996) ................ 16

*Fahy v. Connecticut*, 375 U.S. 85, 88 (1963)........................................... 17

*Garcia v. State*, No. 05-13-01578-CR, 2015 WL 3451867 (Tex. App.—Dallas 2015).................................................................. 8, 12, 14, 15

*Gardner v. State*, 730 S.W.2d 675, 698 (Tex. Crim. App. 1987) ............. 11

*Garrett v. State*, 641 S.W.2d 232 (Tex. Crim. App. 1981)....................... 13

*Harris v. State*, 790 S.W.2d 568, 587–88 (Tex. Crim. App. 1989).......... 13

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979) ....................................... 16

*Kotteakos v. United States*, 328 U.S. 750, 765 (1946) ............................ 17

*Lopez v. State*, 288 S.W.3d 148, 178 (Tex. App.–Corpus Christi 2009, pet. ref'd).................................................................................. 17

*Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006)............ 16

*Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981).............. 13

*Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).......... 12, 14

*Nauert v. State*, 838 S.W.2d 328, 329 (Tex. App.—Austin 1992, pet. ref'd)...................................................................................... 11

*Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) .................. 16

*Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003) ........... 16

*Vasquez v. State*, 819 S.W.2d 932, 936 (Tex. App.—Corpus Christi 1991, pet. ref'd)......................................................................... 11

**Statutes**

TEX. PEN. CODE § 21.02 ............................................................................. 8

**Rules**

TEX. R. APP. P. 21.8(c)............................................................................... 8
TEX. R. APP. P. 44.2(b).............................................................................. 12

**Treatises**

George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 51:1 (3d ed.)......................................... 15

## Identity of Parties and Counsel

For Appellant Jose Miguel Garcia:

RUSS HENRICHS
*Trial counsel of record*
RUSS HENRICHS & ASSOCIATES
P.O. Box 190983
Dallas, Texas 75291

JOHN HEATHER
*Trial counsel of record*
3409 Oak Grove Avenue, Suite 303
Dallas, Texas 75204

BRUCE ANTON
BRETT E. ORDIWAY
*Appellate counsel of record*
SORRELS, UDASHEN & ANTON
2311 Cedar Springs, Suite 250
Dallas, Texas 75201

For Appellee the State of Texas:

ROBBIE PFEIFFER
RENEE HARRIS
*Trial counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE
133 North Riverfront Boulevard
Dallas, Texas 75207

LISA MCMINN
*Appellate counsel of record*
DALLAS COUNTY DISTRICT ATTORNEY'S OFFICE

Trial Court:

CRIMINAL DISTRICT COURT NO. 2 OF DALLAS COUNTY
THE HONORABLE GARY STEPHENS SITTING FOR THE HONORABLE DON ADAMS

## Statement Regarding Oral Argument

Garcia waives oral argument.

## Statement of the Case and Procedural History

Garcia met Tania Aleman at the restaurant in which she worked. (RR3: 14). They soon had two children together, in addition to Aleman's daughter from a previous relationship, the complainant, who Aleman nonetheless raised to believe Garcia was her biological father. (RR3: 13-15, 32).

When the complainant was a teenager, she accused Garcia of fondling her beginning when she was seven years old. (RR3: 70). She alleged it progressed to oral sex, and then intercourse when she was ten years old. (RR3: 78). A pediatric nurse practitioner found no physical evidence of the complainant's allegations, though, and, despite the complainant's contentions that the abuse occurred when others were in the home, the complainant's family members never observed any suspicious behavior. (RR3: 212-213; RR4: 41-42, 50, 54). Additionally, two or three weeks prior to the complainant's outcry Aleman had confessed that Garcia was not her biological father, and, in fact, even Aleman assumed the complainant's allegations were made in rebellion to learning Garcia was not her biological father. (RR3: 32-35). Further, soon after accusing

Garcia the complainant was hospitalized for depression and suicidal behavior. (RR3: 37-38).

A Dallas County grand jury nonetheless indicted Garcia on January 23, 2013, for continuous sexual abuse of a child. *See* TEX. PEN. CODE § 21.02. The State offered a plea bargain of 25 years' imprisonment, but there was "never really negotiat[ion] because Garcia "was [n]ever going to accept." (RR2: 5). He pleaded not guilty, and jury selection for his trial began October 9, 2013. (RR2: 6-7). The trial spanned the following two days, at the conclusion of which the jury found Garcia guilty. (RR4: 97). Approximately one month later, the parties reconvened and the court sentenced Garcia to 35 years' imprisonment. (RR5: 18; CR: 63-64). Garcia then timely filed notice of appeal and a motion for a new trial, the latter of which was overruled by operation of law. (CR: 68, 70); *see* TEX. R. APP. P. 21.8(c).

Garcia then appealed to the Fifth Court of Appeals, raising one issue. *See Garcia v. State*, No. 05-13-01578-CR, 2015 WL 3451867 (Tex. App.—Dallas 2015). The court overruled the issue and affirmed the trial court's judgment. *Id.* No motion for rehearing was filed.

## Argument

Evidence that is merely sufficient to support a conviction does not necessarily mean the conviction was certain. They are related, yet distinct, inquiries.

## I

Upon the conclusion of the State's short case-in-chief, in which the State produced no forensic, eyewitness, or circumstantial evidence, but instead relied solely on the complainant's accusations, the State repeatedly argued to the jury, over objection, that it should nonetheless believe the complainant because others already had:

| | |
|---|---|
| Prosecutor: | [The complainant] was forensically interviewed. |
| | They're trained to look for signs of coaching and signs that they're lying. And guess what, [the police detective] was standing out there watching that forensic interview. If he thought she was lying, would he have filed a case? |
| Defense: | Objection, Judge. Improper argument regarding the credibility of the alleged victim. |
| The court: | Overruled. |

Prosecutor:    Think about it. We brought you people who know [the complainant]. All right? Your job is to judge witness credibility.

Think about it. You do it every day in your normal life. Somebody you don't know well comes up to you and says some story that sounds a little bit outlandish, okay, and you kind of call them on their bull crap; right?

Somebody you know that says something that exaggerates something and you just know they're exaggerating.

We brought you the people who knew her. When [her best friend] hears from her what happened, he knew it was true. That's why he took her into [the dean of students].

When [the dean of students] saw how she was acting and her demeanor, she knew it was true. She called in an officer.

When [the police detective] was watching that forensic interview, he knew what he was hearing was the absolute truth.

Defense:    Judge, objection to the bolstering and the argument about the truth of the alleged victim, the alleged victim being the truth-teller by these witnesses.

The court:    Overruled.

10

(RR4: 90-92). In effect, then, the prosecutor argued to the jury that the police, the complainant's teacher, and the complainant's best friend believed her to be telling the truth, and that, therefore, she *was*.

There is little question that the trial court erred in overruling Garcia's objections. This Court has clearly held that it is improper to suggest to the jury during closing that it should defer to another's assessment of the truthfulness of testimony, no matter how "experienced" that other may be, and in this case, it is plain that the State did just that. *Gardner v. State*, 730 S.W.2d 675, 698 (Tex. Crim. App. 1987). This Court held as much because, "[p]atently, determination of the credibility of a witness is the job of the factfinder." *Id*. Accordingly, in Garcia's brief on appeal, he argued that the trial court erred in overruling his objection to the prosecutor's argument to the jury that it should believe the complainant simply because another did. (Ap. Br. at 11) (citing *id*; *see also Nauert v. State*, 838 S.W.2d 328, 329 (Tex. App.—Austin 1992, pet. ref'd); *Vasquez v. State*, 819 S.W.2d 932, 936 (Tex. App.—Corpus Christi 1991, pet. ref'd)).

11

The court of appeals didn't disagree. *Garcia v. State*, No. 05-13-01578-CR, 2015 WL 3451867, \*3 (Tex. App.—Dallas 2015). Instead, it addressed "[t]he real question": whether the trial court's error affected Garcia's substantial rights. *See* (Ap. Br. at 12) (characterizing the harm analysis as "[t]he real question) (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (improper comments by the prosecutor regarding the honesty or credibility of participants are not considered constitutional errors); TEX. R. APP. P. 44.2(b) (a non-constitutional error must be disregarded unless it affected a substantial right); *see also id.*

As to that question, Garcia argued in his brief on appeal that, in this case, where there was a total lack of evidence absent the complainant's testimony, the court should have grave and severe doubts that the jury's guilty verdict was free from the substantial influence of the prosecutor's improper argument suggesting her testimony was credible. (Ap. Br. at 13-14) (citing *Lopez v. State*, 288 S.W.3d 148, 178 (Tex. App.–Corpus Christi 2009, pet. ref'd)a (in evaluating whether a non-constitutional error affected an appellant's substantial right, and where the evidence is otherwise "not overwhelming," even the uncertainty of

12

harm requires reversal); *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981) (finding reversible error where prosecutor's remarks bolstered the testimony of the only witness); *Garrett v. State*, 641 S.W.2d 232 (Tex. Crim. App. 1981) (hearsay testimony offered to bolster testimony of State's principal witness was prejudicial)). "In this case, as in almost any case, '[i]t is difficult to determine what evidence influenced the jury in reaching [its] criminal verdict, without such a judicial incursion into the mental processes of jurors.'" *Lopez*, 288 S.W.3d at 179 (quoting *Alvarado v. State*, 775 S.W.2d 851, 857 (Tex. App.—San Antonio 1989, pet. ref'd)). But this reality, coupled with the improper argument's great potential to disrupt the juror's evaluation of the evidence, should cause the reviewing court to seriously question whether the jurors were properly able to apply law to facts in order to reach a just verdict. *See generally Harris v. State*, 790 S.W.2d 568, 587–88 (Tex. Crim. App. 1989) ("[T]he reviewing court should focus not on the weight of the other evidence of guilt, but rather on whether the error at issue might possibly have prejudiced the jurors' decision-making; it should ask not whether the jury reached the correct result, but rather whether the ju-

rors were able properly to apply law to facts in order to reach a ver-

dict.").

This time, the court of appeals disagreed. For three reasons:

1) The complainant's "testimony alone was sufficient to support ap-

   pellant's conviction";

2) "The prosecutor's statements came after defense counsel had

   characterized G.A. as someone who 'heard voices' and was there-

   fore not credible";

3) The court instructed the jury both orally and in writing that it was

   "the exclusive judges of the facts proved, of the credibility of the

   witnesses and the weight to be given to the testimony...."

*Garcia*, 2015 WL 3451867 at *3-4. The court's opinion was entirely

based upon this Court's in *Mosley*, in which this Court applied a three-

factor analysis "generally" used by federal courts in evaluating harm-

less error. *Id*. (citing *Mosley,* 983 S.W.2d at 259 ("In applying the federal

rule to improper argument cases, federal courts generally look to three

factors: (1) severity of the misconduct (the magnitude of the prejudicial

effect of the prosecutor's remarks), (2) measures adopted to cure the

14

misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction")).

## II

It is clear from the court of appeals's opinion that it considered the final *Mosley* factor—"the certainty of conviction absent the misconduct"—as weighing in favor of a finding of harmlessness. *See Garcia*, 2015 WL 3451867 at *3. But the only basis on which the court concluded as much was that the complainant's "testimony alone was sufficient to support appellant's conviction." And while related, that is an entirely distinct inquiry.

Evidence sufficiency "addresses not the persuasion of the trial fact finder—the jury or if jury trial is waived the trial judge—on the basis of this evidence but rather the scrutiny of this evidence to assure that it is sufficient for the trial fact finder to reach a finding of guilt." George E. Dix & John M. Schmolesky, 43A TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 51:1 (3d ed.). To that end, in evaluating the legal sufficiency of the evidence, all that matters is whether, viewing the evi-

15

dence in the light most favorable to the verdict, a rational trier of fact could have found the defendant guilty of all of the elements of the offense beyond a reasonable doubt. *See, e.g., Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003)). This is far short of the standard required to find a person guilty in the trial court. Indeed, evidence that rationally supports a verdict of guilt beyond a reasonable doubt under the *Jackson v. Virginia* legal sufficiency standard does not even necessarily meet the since-discarded factual sufficiency standard. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). And that, too, required a "deferential standard[ ] of review applied" to jury verdicts. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). Whether the evidence was legally sufficient, then, is hardly indicative of whether Garcia's conviction was "certain" absent the trial court's error. The former is insulated by far too much deference.

It is for this reason that, in determining whether a substantial right was affected, a reviewing court should not be concerned "with

whether there was sufficient evidence on which [Garcia] could have been convicted." *Lopez*, 288 S.W.3d at 178 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 88 (1963)). The question, instead, is whether there is a reasonable possibility that the prosecutor's closing argument "might have contributed to the conviction." *Fahy*, 375 U.S. at 88. As the United States Supreme Court explained in *Kotteakos*:

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. *The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence.* If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos v. United States*, 328 U.S. 750, 765 (1946) (emphasis added).

The court of appeals in this case did just the opposite: it evaluated whether the evidence was sufficient, and, upon concluding it was, affirmed Garcia's conviction. This was incorrect.

## Prayer

Accordingly, Garcia respectfully requests this Court to grant this petition so that it may reverse and remand this case to the court of ap-

17

peals to properly evaluate whether Garcia's conviction was certain absent the trial court's error.

Respectfully submitted,

/s/ Bruce Anton
BRUCE ANTON
Bar Card No. 01274700

/s/ Brett E. Ordiway
BRETT E. ORDIWAY
Bar Card No. 24079086

SORRELS, UDASHEN & ANTON
2311 Cedar Springs Road
Suite 250
Dallas, Texas 75201
bordiway@sualaw.com
(214)-468-8100 (office)
(214)-468-8104 (fax)

Attorneys for Appellant

## Certificate of Service

I, the undersigned, hereby certify that a true and correct copy of the foregoing Appellant's Petition for Discretionary Review was electronically served to the Dallas County District Attorney's office on July 22, 2015.


/s/ Bruce Anton
Bruce Anton


## Certificate of Compliance

Pursuant to TEX. R. APP. P. 9.4(i)(3), undersigned counsel certifies that this brief complies with:

1. the type-volume limitation of TEX. R. APP. P. 9.4(i)(2)(D) because this brief contains 1,702 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2. the typeface requirements of TEX. R. APP. P. 9.4(e) and the type style requirements of TEX. R. APP. P. 9.4(e) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2011 in 14-point Century.


/s/ Bruce Anton
Bruce Anton


19

# Appendix

Affirmed and Opinion Filed May 29, 2015



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-13-01578-CR

**JOSE MIGUEL GARCIA, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 2**
**Dallas County, Texas**
**Trial Court Cause No. F-12-35086-I**

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Bridges

Jose Miguel Garcia appeals his continuous sexual abuse of a child conviction. A jury convicted appellant, and the trial court sentenced him to thirty-five years' imprisonment. In a single issue, appellant argues the trial court erred in permitting the State to argue at closing that the jury should believe the complainant's accusations because others already had. We affirm the trial court's judgment.

Because appellant does not challenge the sufficiency of the evidence to support his conviction, only a brief recitation of the facts is necessary. The complainant, G.A., was three years old when her mother met appellant. G.A. grew up thinking that appellant was her biological father. G.A. was "about seven" when appellant began touching her over her clothes "and then he progressed to touching, going under [her] shirt and under [her] pants." When G.A.

was eight, appellant began making her put her mouth on his penis. Eventually, appellant began putting his penis in G.A.'s vagina, and this happened "over fifty times." When G.A. was fourteen, her mother told her that appellant was not her biological father. A "couple of weeks" later, G.A. was "playing a game of telling secrets" with two friends at school by passing notes. G.A. wrote "my dad touches me" in a note, and her friend responded with a "disgusted kind of look" and initiated a follow-up conversation. The friend advised G.A. to go to the counselor, Tracy Bennett. In response to G.A.'s disclosure, Bennett followed the protocol of notifying an administrator, who in turn involved the school resource officer, Tom Goane, who was the "police officer on campus." Goane briefly questioned G.A. and contacted an Irving police detective, Stephen Lee.

Appellant was subsequently indicted on a charge of continuous sexual abuse of a child. In closing argument, defense counsel asserted the State had spent "the lion's share of their time" telling the jury why there was no proof of the underlying offense. Defense counsel argued, "the only thing [the State has] is the assertions of [G.A.] and they spent their entire time telling you why." Defense counsel argued G.A. "changed her story . . . on the stand even." Characterizing G.A. as "embellishing" and adding to her story, defense counsel stated, "They said, well that's normal. The more she tells it the better it gets and the more she adds and the more she opens up. Can you believe that beyond a reasonable doubt?" Defense counsel argued G.A.'s mother, when first told of the allegations of abuse, did not believe G.A. and thought G.A. had made the allegations "because she was mad because she had just found out [appellant] was to [sic] her biological father." Defense counsel argued the State was asking jurors to "Trust us. Why would [G.A.] go through this." Immediately, defense counsel raised the issue of G.A.'s mental health:

> Well, they did find out that she was having a mental problem. She was having ideation. She was hearing voices. She did hear voices say hurt people, hurt people in the family. Well, this happened after she said all this began? But the

–2–

development preceded any of these allegations. She's relating these things prior to the allegations being made, these occurrences of hearing things.

Co-counsel for the defense emphasized that "whether she was sexually abused or not," G.A. was "a young girl with severe problems." Co-counsel made the following argument:

The thing that [G.A.] said on the stand that which is telling is that she does hear voices. That's quite an astonishing thing. I'm so sorry to hear that, but it has to be considered. The voices tell her to do things. They told her to harm her sister and her brother. They told her to push down the grandfather, the shadowy figure out there, the grandfather. Push him down. She was somewhat evasive. She couldn't remember when those voices talked to her but she did remember they started a long time ago. So she is a person – if that doesn't raise a reasonable doubt, you might wonder what could. Can you base the verdict on the credibility of a person who hears voices? It's that simple really.

In his closing argument, the prosecutor urged the jury to "Remember the evidence. I'm not going to try to mischaracterize it, all right, or change anything that people really said up there. I'm just going to ask you to listen and you decide what's reasonable and what makes sense." The prosecutor emphasized the many opportunities G.A. had to "take it back" and the "financial ruin" that followed for the family once appellant went to jail. As to G.A.'s suicidal thoughts and cutting, the prosecutor stated those behaviors started when G.A. was ten years old, at the same time appellant began having sex with her. After the prosecutor raised the subject of G.A.'s forensic interview, the following exchange occurred:

[PROSECUTOR]: [G.A.] was forensically interviewed. They're trained to look for signs of coaching and signs that they're lying. And guess what, Detective Lee was standing out there watching that forensic interview. If he thought she was lying, would he have filed a case?

[DEFENSE COUNSEL]: Objection, judge. Improper argument regarding the credibility of the alleged victim.

[THE COURT]: Overruled.

[PROSECUTOR]: Think about it. We brought you people who know G.A. All right? Your job is to judge witness credibility. Think about it. You do it every day in your normal life. Somebody you don't know well comes up to you and says some story that sounds a little bit outlandish, okay, and you kind of call them on their bull crap; right? Somebody you know that says something that exaggerates something and you just know they're exaggerating. We brought you

–3–

the people who knew her. When [[G.A.]'s friend from school] hears from her what happened, he knew it was true. That's why he took her in to Ms. Bennett. When Ms. Bennett saw how she was acting and her demeanor, she knew it was true. She called in an officer. When Detective Lee was watching that forensic interview, he knew what he was hearing was the absolute truth.

[DEFENSE COUNSEL]: Judge, objection to the bolstering and argument about the truth of the alleged victim, the alleged victim being the truth-teller by these witnesses.

[THE COURT]: Overruled.

[PROSECUTOR]: So right up through . . . the therapist. She's been seeing her now for eleven months. Not one time did she ever have any reason to believe that nothing happened. I mean, so you're being asked -- folks, think about this. All right? This is what you're being asked to do. You're being asked to believe that G.A. made this all up, but for what? Okay? So let me get this straight then. The smoking gun is that we have a teenager who would rather listen to music and not do chores, and so therefore something must be wrong. All right? That's absurd. And how about finding out that that's not really her biological dad. Think about that. So let me get this straight. She finds out it's not her biological dad. But I guess then -- what does she gain then from saying that he sexually abused her? What would she gain from that? All right?

The jury convicted appellant of continuous sexual abuse of a child, and this appeal followed.

In his sole point of error, appellant argues the trial court erred in permitting the State to argue at closing that the jury should believe the complainant's accusations because others already had.

The trial court's ruling on an objection to improper jury argument is reviewed for an abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Proper areas of jury argument are: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument of opposing counsel; and (4) pleas for law enforcement. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Counsel is generally given wide latitude in drawing inferences from evidence as long as they are reasonable, fair, legitimate, and offered in good faith. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *See Garcia*, 126 S.W.3d at 924.

The State argues the prosecutor's argument was a proper response to defense counsel's argument that G.A. was not credible. *But see Gardner v. State*, 730 S.W.2d 675, 698 (Tex. Crim. App. 1987) (it is error to argue jury should believe witness simply because prosecutors and investigators do).

However, even assuming without deciding the trial court erred in overruling appellant's objections, he cannot show he was harmed. Even if jury argument falls outside permissible areas, an appellate court will not reverse unless the error is harmful. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Improper jury argument is reviewed under rule 44.2(b) of the rules of appellate procedure and must be disregarded unless it affected appellant's substantial rights. TEX. R. APP. P. 44.2(b); *see Martinez v. State*, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000). In determining whether appellant's substantial rights were affected, we consider: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instructions by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley*, 983 S.W.2d at 259.

Here, G.A. testified she was "about seven" when appellant began touching her over her clothes "and then he progressed to touching, going under [her] shirt and under [her] pants." When G.A. was eight, appellant began making her put her mouth on his penis. Eventually, appellant began putting his penis in G.A.'s vagina, and this happened "over fifty times." This testimony alone was sufficient to support appellant's conviction. *See* TEX. CODE CRIM. PROC. ANN. art 38.07 (West Supp. 2014). The prosecutor's statements came after defense counsel had characterized G.A. as someone who "heard voices" and was therefore not credible. Prior to either side presenting argument, the trial court gave the jury the following instruction:

> Once the charge is read to you, you will hear arguments from the lawyers. The purpose of the argument is to try to guide you to the conclusion that the person

giving the argument believes is appropriate under the evidence. But I want to remind you that the arguments themselves do not constitute evidence. Evidence is what you heard from the witness stand from witnesses who were sworn in and questioned, or evidence is whatever was introduced into evidence by way of photographs or reports. So again, you will base your verdict on the law that I give you and the evidence as it was developed during the trial, and the argument is to try to guide you to the conclusion the arguer believes is appropriate.

In its charge to the jury, the trial court once again instructed the jury that they were "the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given to the testimony . . . ." After examining the record as a whole, we have a fair assurance that the error did not influence the jury, or had but a slight effect. *See Mosley*, 983 S.W.2d at 259. We overrule appellant's sole issue.

We affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47.2(b)

131578F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

JOSE MIGUEL GARCIA, Appellant

No. 05-13-01578-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2, Dallas County, Texas
Trial Court Cause No. F-12-35086-I.
Opinion delivered by Justice Bridges.
Justices Lang-Miers and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered May 29, 2015.