**1039-15**

NO. 01-13-00683-CR

ORIGINAL

IN The
court of appeals
first JUDICIAL DISTRICT
HOUSTON, Texas

RECEIVED IN
COURT OF CRIMINAL APPEALS

OCT 20 2015

Abel Acosta, Clerk

Michael EDWARD WYSACK
APPellant

V.

State OF TEXAS
APPellee

On Appeal in cause NO. 68910
23RD Judicial District court, Brazoria county, Texas
HONORABLE FRANK CARMONA, Judge presiding

Michael Edward wysack
TDCJ#01869233
michael unit
2664 FM 2054
Tennessee colony, Tx 75886

pro-se

No oral argument is requested

# SUBJECT INDEX

|  | Page |
|---|---|
| Parties to the case | 2 |
| Index of Authorities | 3 |
| Statement of case | 4 |
| Statement of facts | 4 |
| Appellant's Point of Error | 6 |
| Argument | 5 - 18 |
| Conclusion | 19 |
| Prayer | 19 |
| Certificate of service | 20 |

Parties to the case

Appellant:     Michael Edward Wysack

Attorney for Appellant at trial:
            Name: Frank J. Fraley
            Address: 2616 South Loop West, Suite 503
                  Houston, TX 77054
                  Telephone: 713-668-4496
                  Fax: 713-668-4497
Attorney for Appellant on appeal:
            Name: Keith G. Allen
            Address: Law offices of Keith G. Allen, PLLC
                  2360 CR 94, Suite 106
                  Pearland, TX 77584
                  Telephone: 832-230-0075
                  Fax: 832-413-5896


Appellee:          The State of Texas
Attorney for the State at trial:
            Name: Kurt Sistrunk and Natalie Broaddus
                  Assistant Criminal District Attorney
            Address: Brazoria County Court
                  111 E. Locust, Room 408 A
                  Angleton, TX 77515
                  Telephone: 979-864-1230
                  Fax: 979-864-1525
Attorney for the State on appeal:
            Name: Jeri Yenne
                  Brazoria County Criminal District Attorney
            Address: Brazoria County courthouse
                  111 E. Locust, Room 408 A
                  Angleton, TX 77575
                  Telephone: 979-864-1230
                  Fax: 979-864-1525

2

Cases          INDEX OF AUTHORITIES        page

Aldrich v. state, 296 s.w. 3d 225 (Tex. App.-Fort worth 2010, pet, ref'd)

Alvarado v. state, 775 s.w. 2d 85 (Tex. App.-San Antonio 1989, pet ref'd)

Andrews. v. state, 159 s.w. 3d 98 (Tex, crim. App. 2005)

Baldwin v. state, 668 s.w. 2d 762 (Tex. crim. App. 1984)

Boyington v. state, 738 s.w. 2d 704 (Tex. App.-Houston [14th Dist.] 1990, pet. ref'd)

Crank v. state, 761 s.w. 2d 328 (Tex. crim. App. 1988),
cert, denied, 493 u.s. 874 (1989).

Cuyler v. Sullivan, 446 u.s. 335 (1980)

Damian v. state, 881 s.w. 2d 102 (Tex. App.-Houston [1st Dist.] 1994, pet ref'd)

Garcia v. state, 308 s.w. 2d 62 (Tex. App.-San Anotino 2009)

Garcia v. state, 212 s.w. 2d 249 (Tex. App.-El paso 1986, pet ref'd)

Gonzales v. state, 723 s.w. 2d 67 (Tex. App.-Houston [1st Dist.] 1987)

Ex part Welborn, 785 s.w. 2d 391 (Tex. crim. App. 1990)

Ex Part Felton, 815 s.w. 2d 733 (Tex. crim. App. 1991)

Hernandez v. state, 726 s.w. 2d 53 (Tex. crim. App. 1986)

Hitt v. state, 53 s.w. 3d 697 (Tex. App.-Austin 2001 pet ref'd)

Lane v. state, 822 s.w. 2d 35 (Tex. crim. App. 1991)

Lyons v. McCotter, 770 F. 2d 529 (5th cir. 1985

Martin v. state, 176 s.w. 3d 887 (Tex. App.-Fort worth 2005)

McMann v. Richardson, 397 u.s. 759 (1970)

Miller-El v. state, 782 s.w. 2d 892 (Tex. crim. App. 1990)

Montgomery v. state, 810 s.w. 2d 372 (Tex. crim. App. 1990)

Owens v. state, 827 s.w. 2d 911 (Tex. crim. App. 1992

Petruccelli v. state, 174 s.w. 3d 76 (Tex. App.-waco 2005, pet. ref'd)

Powell v. Alabama, 287 u.s. 45 (1932)

Reyes v. state, 69 s.w. 3d 225 (Tex. App.-Corpus christi 2002 pet. ref'd)

Robinson v. state, 16 s.w. 3d 808 (Tex. crim. App. 2000)

Salazar v. state, 90 s.w. 3d 330 (Tex. crim. App. 2002)

Stavinoha v. state, 808 s.w. 2d 76 (Tex. crim. App. 1991)

Strickland v. washington, 466 u.s. 668 (1984)

Weatherby v. state, 627 s.w. 2d 729 (Tex. crim. App. 1982)

Constitutions

U.S. const., Amends, VI and XIV

Tex. const. art. I, sec. 10

Statutes and Rules

Tex. Code crim. Proc. Ann. art. 38.37

Tex. R. Evid. 403

## Statement of the case

On October 18, 2012, appellant, Michael Wysuck, was indicted on five counts of aggravated sexual assault of a child involving the complainant, Zadaya Abundo. (CR1 at 5). The offenses were alleged to have occured between August 1, 2010 and June 20, 2011. (CR1 at 5). On July 12, 2013, a jury found the appellant guilty of all five counts and sentenced him to 99 years confinement in the Texas Department of criminal justice — Institutional Division on each count with the sentences to run concurrently. (CR1 at 92). notice of appeal was filed on July 12, 2013. (CR1 at 94).

## Statement of Facts

The state's first witness was Sandra Ochoa, a corporal with the Kingsville Police Department. (RR1 at 18). she first met Eva Abundo and her two daughters at the Kingsville Police Department. (RR1 at 20). At the time they met, Eva was upset, crying and runing her hands through her hair. (RR1 at 20). Corporal Ochoa informed Eva that her agency would not be able to present a case of sexual assault against michael wysuck and referred her to Detective Jaso with the pearland Police Department. (RR1 at 22-23). Eva became very upset and stated that she felt like nothing was being done to help her child, no one was listening to her story, and she was getting the run around. (RR1 at 22-23). Eva asked corporal Ochou to speak to her children because her had been depressed and was cutting herself. (RR1 at 24).

4

## ARGUMENT

A Defendant in a criminal trial has the right to effective assistance of counsel. U.S. Const. Amends. VI and XIV; Tex. Const. art. 1, sec 10; Powell v. Alabama, 287 U.S. 45, 66 (1932). Trial counsel must act within the range of competence demanded of attorneys in criminal cases. McMann v. Richardson, 397 U.S. 759, 771 (1970). The same standards apply in evaluating the representation, but even a single error can constitute ineffective assistance of counsel. Ex parte Felton, 815 S.W. 2d 733, 736 (Tex. Crim. App, 1991). In addition, a defendant in a criminal trial does not need to object at trial to counsel's ineffective representation to preserve the issue for appeal. Robinson v. state, 16 S.W. 3d 808, 813 (Tex. Crim. App. 2000).

In order to have a conviction reversed on appeal, an appellant must show that trial counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant by depriving him of a fair trial with reliable results. Strickland v. Washington, 466 U.S. 668, 687 (1984). The appellate court must judge trial counsel's conduct based upon the particular facts of each case. Id. at 690. The appellant must show that trial counsel's representation fell below an objective standard of reasonableness. Id at 688. In determining ineffective assistance of counsel, the appellant must identify act or omissions by trial counsel that were not the results of reasonable professional judgment and were outside the range of professionally competent assistance. Id. at 690. Ultimately, the appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. Reasonable probability is a probability sufficient to undermine the confidence in the outcome. Id. The standards announced in strickland also apply to criminal

Cases in Texas. See Hernandez v. state, 726 s.w. 2d 53 (Tex. Crim. App. 1986).

In this case, Defense counsel's numerous errors combined to result in the appellant receiving ineffective assistance of counsel. Those errors included: 1) failing to object to victim impact testimony at the guilt/innocence phase of trial; 2) failing to object to hearsay; 3) permittin the introduction of extraneous acts; 4) failing to object to opinion testimony regarding the defendant's guilt and the complainant's truthfulness;) failing to record jury selection; 6) misstating facts in closing arguments; and 7) failing to object to the content of a penitentiary packet.

These errors are discussed in detail as follow:

## Victim Impact Testimony at the Guilt/Innocence Phase

Defense counsel failed to object to victim impact testimony being presented at the guilt/innocence phase of the trial. Eva testified before the jury, during the guilt/innocence phase of the trial, that as a result of this matter, Zadaya has attened therapy; she was cutting herself; and she was trying to commit suicide; but now she is helping other children like her. CRR3 at 45-46). Daniella also testified, without objection, that Zadaya would cut herself. CRR3 at 102 & 108).

Outside of the context of homicide cases, victim impact evidence is generally defined as evidence regarding "the physical or psychological effect of the crime on the victims themselves." Lane v. State, 822 s.w.2d 35, 41 (Tex. Crim. App. 1991). Victim impact evidence is generally not admissible in the guilt/innocence phase of the trial, but can be admitted in the punishment phase when that evidence has some bearing on the defendant's personal responsibility and moral culpability. Petruccelli v. state, 174 s.w. 3d 761, 768 (Tex. App. - waco 2005, Pet.

ref'd), citing Salazar v. State, 90 S.W. 3d 330, 335 (Tex. Crim. App. 2002). Victim testimony is generally irrelevant at guilt/innocence because it does not tend to make more or less probable the existence of any fact of consequence at guilt-innocence. Martin v. State, 176 S.W. 3d 887, 903 (Tex. App.—Fort Worth 2005), referencing Miller-El v. State, 782 S.W. 2d 892, 895 (Tex. Crim. App. 1990). In Martin, the appellate court held that the trial court abused its discretion by allowing the victim of a sexual assault to testify at guilt/innocence about the impact that her memories of the crime have had on her relationship with her fiancé.

In this case, Eva's and Daniella's testimony regarding the after effects that the alleged assault has had on Zudaya is clearly victim impact testimony that would have had an effect on the jury's deliberation on guilt/innocence. The following testimony of Abundo durin the guilt phase of trial:

[State]: Did you take any actions to [the complainant] to help her in any way with this matter, any kind of counseling services?

[Abundo]: Yes, I took her [to] therapy.

[State]: Did you notice at this point anything about your daughter, anything that she was doing to herself that caused you concern?

[Abundo]: She — started cutting herself

7

[state]: --- [W]hen we talk about people cutting themselves, they are intending to do - what did YOU THINK IT MEANT your daughter was doing?

[Abundo]: That she was trying to commit suicide.

Here ms. Eva Abundo, stated an opinion regarding "the physical or psychological effect of the crime on the victim herselve. ms. Abundo's testimony, is cleary victim impact testimony that would have had an effect on the jury's deliberation on guilt/innocence without no facts.

Nowever, ms. Abundo also testified in court.

[Abundo]: My daughter now, in order for her to NOT KILL HER-SELF OR ATTEMPT TO BECAUSE The THOUGHT GOES, She's now saving the lives of other kids, She talks To other kids, She keeps other kids from cutting Themselves she's part of what you call it's Rachel's challenge.
However, testimony regarding The psychological impact that the offense has had on the complainant and how she is now counseling other children like her was improper testimony for guilt/innocence.
Daniella's testimony regarding The after effects that the alleged assault has had on Zudaya is clearly victim testimony that would also would had an effect on the jury's deliberation on guilt/innocence.
The First District court of Appeals of Texas, states that the victim-impact testimony is generall irrelevant at the guilt phase of the trial because it does not tend to make more or less probable the existence of any fact of consequence at the stage.

8

However, the testimony Eva and Daniella stated was before Zaduya testify of any her memories impact of the crime, making the defendant look guilty as he had committed the crime with no fact.

And as "the physical or psychological effect of the crime on the victims themselves" Lane v. State, 822 S.W. 2d 35, 41 (Tex. Crim. App. 1991), and defense counsel was deficient in failing to object.

## HEARSAY TESTIMONY

Permitting the admission of inadmissible hearsay can amount to ineffective assistance of counsel resulting in a reversal of judgment and remand for a new trial. Baldwin v. State, 668 S.W. 2d 762 (Tex. Crim. App. 1984). At trial, defense counsel failed to object to hearsay on numerous occasions. Corporal Ochoa was allowed to testify, without objection, that Eva stated that she felt like nothing was being done to help her child; no one was listening to her story; and she was getting the run around. (RR1 at 22 & 23). Ochoa also testified, without objection, that Eva asked her to speak to the children because her daughter had been depressed and was cutting herself. (RR1 at 24). Ochoa also testified, without objection, that the only other contact she had with Eva was when Eva called her and thanked her for her help. (RR1 at 26).

Pearland Police Department Patrolman Richard Ziegelmeyer testified, without objection, that Eva was rather animated and upset because she had just found out about the abuse, her daughter had told her, and she wanted something done immediately. (RR1 at 38). Officer Ziegelmeyer also testified that Eva told him that she had first heard about the abuse from her daughter's friend. (RR1 at 45).

9

Kristi Belloumini, the forensic interviewer at the children's Advocacy center who interviewed Zadaya, testified, without objection, that Zadaya had disclosed sexual abuse to her. (RR4 at 49). She also testified, without objection, as to how Zadaya described the injury to Michael's penis. (RR4 at 50). The state went on to stress the importance of this inadmissible hearsay testimony in their closing argument by stating: "you can compare that testimony with State's Exhibit No. 2 and you can think about the most important testimony that Kristi Belloumini had. She said that Zadaya indicated what she saw, what it looked like on the defendant's penis." (RR4 at 85). Belloumini's Testimony could not be considered an outcry statement pursuant to Tex. code crim. Proc. Ann. art 38.072 because Eva's previous testimony had been admitted as the outcry statement. Failure of defense counsel to understand the law on outcry testimony and to raise a proper objection to corroborating testimony is deficient performance that prejudices a defendant. Garcia v. State, 308 s.w. 3d 62, 70 (Tex. App.—San Antonio 2009). In Alvarado v. State, 775, s.w. 2d 851, 856 (Tex. App.—San Antonio 1989, pet ref'd), the court held that the erroneous admission of hearsay testimony by the complainant's mother, doctor and counselor was fundamentally unfair and resulted in the case being reversed due to ineffective assistance of counsel.

However, the court of appeals argues only two of the statement that corporal Ochoa testified on when three testimonys was at issue. Further more the court of appeals does the same with the testimonys of officer Ziegelmeyer only argues some of the issue. Thou the issue is based on overall testimonys not partial.

Showing the testimonys and to raise a proper objection to corroborating testimony is deficient performance that prejudice a defendant.

10

However, the court of appeals close the same overlooking also the issue of Belloumini's testimony could not be considered an outcry statement pursuant to Tex. code crime Proc. Ann. art 38.072 because Eva's previous testimony had been admitted as the outcry statement.

The issue is not argued over all to the raiseing of proper objection to corrohorating testimonys. Now can the court of appeals affirm the judgment of the trial court when failed to rebuttal the overall issue? Nevertheless the court of appeals used case law that is not designated for publication. How can pro-se as I rebuttal a defense when the TDC law library says that they can not supply a pro-se with, not designated for publication cases.

which was used to rebuttal Belloumini's testimony's snowing case laws: smith v. state, No. 04-03-00544-CR, 2005 WL 1230632, at *5 (Tex. App.—San Antonio may 25, 2005, no pet.) (mem. op., not designated for publication); Curtis v. state, No. 01-03-00687-CR, 2004 WL 2118487, at *5 (Tex. App.—Houston [1st Dist.] Sept, 23, 2004, Pet. ref'd) (mem. op; not designated for publication).

## Extraneous Acts

Defense counsel was the first person to mention the act of indecent exposure not alleged in the indictment. During his opening statement, trial counsel stated: "now, Zaduya said that Michael showed her his penis. That it has a scar on it from a hamster bite, but you will see from the evidence, there are no such scars on Michael penis" (RR1 at 16). Defense counsel was also the first person to ask a witness about the extraneous offense. on cross examination, Defense counsel asked Detective Jaso, whether she had asked Michael about a mark on his penis. (RR1 at 61).

Michael told Detective Jaso that he did not have any scars, marks, or tattoos on his penis. (RR1 at 61). Defense counsel then asked whether she had any reason to believe that Michael was not telling the truth about not having any marks on his penis and she replied "no, not at that point." (RR1 at 63). Defense counsel's opening of the door to extraneous acts can amount to deficient performance. See Garcia v. State, 308 S.W. 3d 62, 69 (Tex. App.-San Anotnio 2009).

Zadaya later testified, without objection, that she did tell her mom that Michael had exposed himself to her when she was around five years old. (RR3 at 124). Michael had said that an animal bit him on top of his penis and she saw a straight line scar. (RR3 at 125). State's Exhibit 2, an alleged photo of Michael's penis, was admitted without objection. (RR3 at 140-141). While Zadaya did testify that she recognized the picture as being the defendant's penis, there was no testimony regarding how, when, or by whom the photo was taken. The damaging effect on the defendant of the evidence and testimony regarding this extraneous act was also emphasized by the state in its closing argument. (RR4 at 85). There was a pretrial motion to suppress filed, however, it was never presented or ruled upon. (CR at 22-25). Zadaya also testified, without objection, to another extraneous act where she alleged that Michael attempted to place her hand over his pants around his penis. (RR3 at 136).

Defense counsel's only objection regarding any extraneous acts was when Zadaya testified that Michael penetrated her with his finger while she was in the shower. (RR3 at 127). However, penetration by the defendant's finger was an act alleged in the indictment. (CR at 5).

Defense counsel should not have opened the door during his opening statement and cross examination of Detective Jaso to the extraneous act of indecent exposure. There can be no sound strategy to open the door and say that there is no

mark when there clearly is a mark on the defendant's penis as shown in state's Exhibit 2. Hoping that the jury does not look at the photo is not a sound strategy. Defense counsel should have waited to see if the state was going to attempt to introduce the extraneous offenses. Trial counsel could have then objected to the introduction of both extraneous offenses pursuant to Tex. R. Evid. 403. An accused is entitled to be tried on the allegation in the indictment and not for some collateral crime nor for being a criminal generally. Crank v. State, 761 S.W. 2d 328, 341 (Tex. Crim. App. 1988), cert. denied, 443 U.S. 874 (1989). "It is a fundamental tenet of our criminal justice system that an accused may be tried only for the offense for which he is charged and not for being a criminal generall", Reyes v. State, 69 S.W. 3d 725, 735 (Tex. App.— Corpus Christi 2002, pet. ref'd), citing Owens v. state, 827, S.W. 2d 911, 914 (Tex. Crim. App. 1992). If an objection is made, the proponent of the extraneous offense must show the court that the extraneous act has relevance apart from showing the defendant acted in conformity therewith. Montgomery v. State, 810 S.W. 2d 372, 382 (Tex. Crim. App. 1990). Once the trial court rules that an extraneous offense is admissible, trial counsel must also object under Rule 403. Id at 388. Tex. Code Crim. Proc. Ann. art 38. 37. Under Tex. R. Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. Code Crim. Proc. Ann. art. 38. 37 provides that evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including the state of mind of the defendant and the child. However, when evidence of a defendant's extraneous acts is relevant under article 38.37 the trial court is till required to conduct a Rule 403 balancing test upon a proper objection

13

or request. *Hitt v. State*, 53 S.W. 3d 697, 706 (Tex. App. — Austin 2001, pet. ref'd). In this case, Defense counsel not only opened the door, but also failed to object to the extraneous acts pursuant to Tex. R. Evid. 403 and ask the court to perform a balancing test to determine if the probative value was substantially outweighed by the danger of unfair prejudice.

Now, the court of appeals responded not on the fact that the trial counsel opened the door to an extraneous acts of indecent exposure in his opening statement. (RRI at 16). But to the fact that why the extraneous acts of indecent exposure should have been admitted.

However, the court of appeals responded explaing what strategy trial counsel could have adopted that would have led to the exclusion of this evidence or nullified it because such extraneous material would have been properly admitted — even over defense counsel's objection.

However, that does not excuse the fact of expectation of trial counsel. Defense counsel should not have opened the door during his opening statement and cross examination (RRI at 16); (RRI at 61).

Defense counsel should have waited to see if the state was going to attempt to introduce the extraneous offenses. Trial counsel could have then objected to the introduction of both extraneous offenses pursuant to Tex. R. Evid. 403. An accused is entitled to be tried on the allegations in the indictment and not for some collateral crime nor for being a criminal generally. *Crank v. State*, 761 S.W. 2d 328, 341 (Tex. Crim. App. 1988), cert. denied, 493 U.S. 874 (1989). "It is a fundamental tenet of our criminal justice system that an accused may be tried only for the offense for which he is charged and not for being a criminal generally." Here it shows that trial counsel was deficient on this ground.

14

## Opinion Testimony

Pearland Police Detective Meredith Jaso was allowed to testify, without objection, that she never got any indication during her investigation that Eva and her daughter where "making up some story."(RR1 at 70). Allowing such testimony amounted to a comment on the defendant's guilt and the truthfulness of the witnesses. Detective Jaso was also allowed to testify, without objection, that it is not unusual for a child victim to be triggered into giving an outcry after seeing the accused again. (RR1 at 70). This testimony was also an improper comment on the complainant's truthfulness.

Kingsville Police corporal Sandra Ochoa also testified, without objection, that she told Zadaya that she could not talk to her about what had happened to her but that she wanted her to know that it wasn't her fault and that there was nothing she could have done to stop it. (RR1 at 25). This testimony clearly left the jury with the impression that Ochoa also believed the allegations of sexual assault.

It is ineffective assistance of counsel to permit a police detective to give an opinion as to the truthfulness of a complaining witness. Garcia v. State, 712 S.W. 2d 249, 253 (Tex. App.-El Paso 1986, pet. ref'd). As pointed out in Garcia, passing on the credibility of a witness is the sole responsibility of the trier of the facts. Id. at 252. In Weatherby v. State, 627 S.W. 729 (Tex. Crim. App. 1982), the court stated that it was improper to allow a detective to testify that in their opinion the appellant was guilty and failure to object to such testimony amounted to ineffective assistance of counsel.

However, the court of appeals replied to the issue by useing (not designated for publication) cases: showing Sandoval v. State, 409 S.W. 3d 259, 259-92 (Tex. App.-Austin 2013, no pet.); and supporting it case: Lewis V. State, No. 02-11-00112-CR, 2012 WL

15

858601, at *1 (Tex. App. - Fort Worth Mar. 15, 2012, no pet.) (mem. op., not designated for publication). I an appellant Pro-se am not eligible to rebuttal on case law that is not designated for publication. TDC Law library does not supply Pro-se un-publication cases. That deprives the appellant Pro-se of a fair rebuttal with reliable results.

## Failure to Record Jury selection

The jury selection process in this case was not recorded by the court reporter. Appellant is aware that failure to request recordation of voir dire is not per se ineffective assistances of counsel requiring a reversal. See Gonzales v. State, 723, S.W. 2d 67 (Tex. App. - Houston [1st Dist.] 1987). However, it should certainly be considered when determining if trial counsel's overall performance was deficient.

However, the court of appeals responed that the appellant must raise an injury resulting from counsel's failure to request transcription.

Appellate cannot think of a single legitimate reson why defense counsel would ever waive the recording of jury selection. Without a record, one would never know whether there was error committed during jury selection or whether trial counsel was ineffective. As stated in Gonzales, an appellate can not speculate as to what may or may not have transpired at trial. However, unless trial counsel requests a record, how would we ever know?

## misstatement of facts in closing Argument

Defense counsel failed to object to the State's misstatement of the facts during closing arguments. In closing arguments, the prosecutor stated that "she told you he put his fingers in her more than 15 times." (RR a77). According to

16

the record, Zadaya testified that michael only put his finger inside "about 5 times." (RR3 at 129). To make matters worse, defense counsel repeated the error in his closing argument by stating: now, she testified that the touching occured 15 times throughout her life. (RR4 at 79).

Defense counsel's failure to object to the state's misstatement of the facts and making the same misstatement is clearly error. There could be no legitimate trial strategy in failing to object to the prosecutor's misstatement alleging 10 additional acts of misconduct that were not contained in the record and then repeating the same misstatement. In Aldrich v. state, 296 S.W. 3d 225, 254 (Tex. App.—Fort Worth 2010, Pet. ref'd) The appellate court held that defense counsel's misstatement of facts fell below an objective standard of reasonableness and could not be part of any trial strategy thereby satisfying the first prong of the strickland test. Generally, a post-conviction writ is a better way of pursuing a claim of ineffective assistance of counsel because the appellant court would ordinarily need to hear from counsel whether there was a legitimate trial strategy for a certain act or omission. Andrews v. state, 159 S.W. 3d 98, 103 (Tex. Crim. App. 2005). Frequently, the court can conceive of potentially reasonable trial strategies that counsel could have been pursuing. Id. However, that is not always the case and there are circumstances where the record contains all the information that is needed to make a decision. Id. When the record is sufficient for the court to conclude that counsel's performance was deficient and that the appellant was prejudiced by counsel's failure to object, the proper remedy is to remand the case for a new trial. Id. That is the case here. There is no legitimate trial strategy that would allow such misstatement of fact. This misstatement would have left the jury with the conclusion that there must have been more allegations that they did not hear about and that the defendant must be guilty.

17

Now, the court of appeals cites Exparte Welborn, 785, s.w.2d 391, 393 (Tex. crim. App. 1990); and Thompson v. state, 9 s.w. 3d 808, 814 (Tex. crim. App. 1999), "But court of appeals have not shown facts to support behind counsel's actions - whether those actions were of strategic design or the result of negligent conduct".

However, the appellant has shown with facts to support the issue (see RR4 at 77). According to the record, zadaya testified that michael only put his finger inside her "about 5 times". (RR3 at 129). To make matters worse, defense counsel repeated the error in his closing argument by stating: "Now, she testified that the touching occurred 15 times throughout her life. (RR4 at 79).

Therefore the trial counsel had no strategy and shows counsel's been deficient.

## Penitentiary Packet

Defense counsel did not object to state's Exhibits 4 through 7, the defendant's penitentiary packets and records of prior convictions. (RR5 at 7). Contained within state's Exhibit 7, a pen packet, was a Pre/Post sentence Investigation Report. (RR5 at 107-113). Defense counsel failed to object to the portion of States Exhibit 7 containing the pre/post sentence Investigation Report which included a section labeled Prior Record. (RR at 108-109). In Damian v. state, 881 s.w. 2d 102, 113 (Tex. App. - Houston [1st Dist.] 1994, Pet. ref'd), the court found that defense counsel's failure to object to evidence at punishment stage that defendant had been charged with an offense but only convicted of a lesser offense contributed to a finding of ineffective assistance of counsel. "To pass over the admission of prejudicial and arguably inadmissible evidence may be strategic; to pass over the admission of prejudicial and clearly inadmissible evidence has no strategic value." Lyons v. McCotter, 770 F.2d 529, 534 (5th cir. 1985). In this case, trial counsel's performance

## conclusion

Although no one instance in a case may be sufficent to prove ineffective assistance of counsel, trial counsel's performance taken as a whole can compel such a holding. Ex Parte welborn at 396. It is clear that the appellant did not receive effective assistance of counsel at the trial court level. Defense counsel:1) failing to object to victim impact testimony at the guilt/innocence phase of trial; 2) failing to object to hearsay; 3) permitting the introduction of extraneous acts; 4) failing to object to opinion testimony regarding the defendant's guilt and the complainant's truthfulness; 5) failing to record jury selection; 6) misstateing facts in closing arguments; and 7) failing to object to the content of a penitentiary packet. As a result, trial counsel's performance was deficient and that deficient performance resulted in prejudice to the defendant by depriving him of a fair trial with reliable results. Therefore, there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different.

## PRAYER

WHEREFORE, Appellant prays that appellant's point of error be sustained, the judgment of conviction be reversed and the case remanded for a new trial.

Respectfully submitted,

Michael Wysack

Michael Edward wysack

TDCJ#01869233

Michael unit

2664 FM 2054

Tennessee colony, TX 75886

## CERTIFICATE OF SERVICE

This is to certify that on Oct 13, 2015 a true and correct copy of the above and foregoing document was served on Jeri Yenne, Brazoria county District Attorney, 111 E. Locust #408 A, Angleton, Texas 77515.

Michael Wysack      Oct-13, 2015
Michael E. Wysack

Opinion issued July 16, 2015



In The

# Court of Appeals

For The

## First District of Texas

---

NO. 01-13-00683-CR

---

## MICHAEL EDWARD WYSACK, Appellant

### V.

## THE STATE OF TEXAS, Appellee

---

On Appeal from the 23rd District Court
Brazoria County, Texas
Trial Court Case No. 68910

---

## MEMORANDUM OPINION

A jury found appellant, Michael Edward Wysack, guilty of five counts of

aggravated sexual assault of a child[1] and assessed his punishment for each offense

---

[1]     *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (Vernon Supp. 2014).

at confinement for ninety-nine years and a fine of $10,000. The trial court ordered that the sentences run concurrently. In his sole issue, appellant contends that his trial counsel provided him with ineffective assistance.

We affirm.

## Background

The complainant testified that in 2005, when she was five years old, appellant, who is her uncle, exposed his penis to her and said that "an animal bit him on the top of his penis." He "pulled his penis out of his pants" and showed her a scar, which she described as a "straight line." Later that same day, appellant "put his finger inside" of the complainant while she was in the shower.

During the summers of 2010 and 2011, when the complainant was ten and eleven years old, appellant, who was then living with the complainant's family, "put his fingers in" her "about 5 times." In each instance, the complainant was lying on an upstairs couch, on which appellant routinely slept, and appellant began by massaging her legs. The complainant explained that it was common for appellant to give her massages. He would "either go from [her] feet to [her] legs to . . . get under [her] shorts or pants," or "sometimes he would go from [her] shirt to [her] breasts or from [her] stomach to down there," referring to her vagina. And on June 20, 2011, appellant "put his mouth down there on [her] vagina." Later, he "tried to take [her] hand and put it over his pants around his penis." After the trial

2

court admitted into evidence a photograph of appellant's penis, the complainant testified that the photograph showed the scar that she saw in 2005.

The complainant's mother, Eva Abundo, testified that in 2010 and 2011, Linda Vinttonet, who is her mother, and appellant, who is her step-brother, lived in her home. Abundo explained that her bedroom was downstairs and there were three bedrooms upstairs. The complainant shared an upstairs bedroom with her older sister, Abundo's son slept in the second bedroom, Vinttonet slept in the third bedroom, and appellant slept on an upstairs sofa. While Abundo went to work each day, Vinttonet and appellant were at home, and one or both of them cared for the children, kept the house, and cooked. In September 2011, Abundo, after learning that Vinttonet had started a "relationship" with appellant, asked him to leave. The next day, Vinttonet and appellant moved to Kingsville.

Abundo further testified that in April 2012, she, on assurances that appellant would not be present, traveled with her children to Vinttonet's Kingsville home to visit her. While Abundo was visiting a friend, one of the children telephoned and informed her that appellant had appeared at Vinttonet's home. Abundo then returned to the house, gathered her children, and drove home.

The next day, after the complainant had arrived home from school, Abundo asked her whether appellant had ever done "anything" to her or "touch[ed] her inappropriately." The complainant then told her that appellant had "touched her

3

breast," "went down and put his mouth on [her] cookie," referring to her vagina, and "put his fingers . . . inside [her] cookie." Abundo telephoned the Pearland Police Department ("PPD") to report the sexual assaults, and the officer directed her to file a complaint in Kingsville. The next morning, Abundo drove the complainant to Kingsville, where they met with Kingsville Police Department ("KPD") Detective S. Ochoa.

Detective Ochoa testified that Abundo came into the police department in Kingsville "wanting to report a sexual assault," and she placed Abundo and the complainant into separate interview rooms. After she spoke with Abundo, who explained the circumstances to her, she determined that "the incident" had not occurred in Kingsville. Ochoa then told Abundo that appellant "would have to be prosecuted in the location of the incident" and directed her to return to Pearland. Ochoa explained that Abundo was "upset" and felt that she was "getting the run around." As they were "exiting the interview," Abundo asked Ochoa to talk with the complainant because she had been depressed and was "cutting herself." Ochoa agreed to talk with her, but noted that she could not speak with the complainant about the case. Ochoa talked with the complainant for about twenty minutes and told her that she "could not talk to her about what had happened to her," but she "just wanted her to know that it wasn't her fault and there was nothing to do to stop it."

4

PPD Officer R. Ziegelmeyer testified that when Abundo and her daughters first came into the police department in Pearland, he interviewed them together and then forwarded a report to PPD Detective M. Jaso. Jaso testified that after discussing the allegations with Detective Ochoa, she spoke with Abundo and set up interviews at the Children's Assessment Center ("CAC"), which she watched and heard via a monitor.

The complainant's sister testified that appellant had lived with her family sporadically throughout her life. She noted that during the family visit to her grandmother Vinttonet's Kingsville home in April 2012, appellant came in, said hello, and then left. Although she did not see any of the alleged conduct take place, she explained that on the way home from Kingsville, the complainant "wasn't herself" and began "cutting herself."

Vinttonet testified that she and appellant had lived with the Abundo family in 2010 and 2011; she and appellant began a relationship in February 2011; and Abundo made appellant move out in August 2011. Vinttonet noted that the complainant and her sister had "begged [appellant] not to leave" and "cried when he left." She asserted that her daughter, Abundo, "is capable of a lot of things"; "is a real con-artist"; and "coached the girls to lie about what happened" because she was "jealous" of Vinttonet's relationship with appellant. Vinttonet explained that while the children were visiting her in April 2012, the complainant's father called

5

the complainant and told her that he "wanted to commit suicide because his girlfriend was charging him with rape." And, in 2010, the complainant told her that "her father had molested her," asserting that he had come into her room, "put his hands under the blanket," and touched her. Vinttonet also noted that the complainant had once written a "very ugly letter to her dad and there were words that not even she would think of." Although she initially denied it, the complainant later admitted that her mother had written the letter and she had copied it. And the complainant explained to Vinttonet that "you don't say no to mom."

Stephanie Wysack, appellant's niece, testified that she has known the complainant "since she was born" and spent the summer of 2010 with the complainant's family. She explained that the complainant shared a room with her sister and, on occasion, the sister's boyfriends would sleep overnight in their bedroom. She asserted that the complainant frequently lied and would "get mad and storm off" whenever the "attention was not focused on her."

Mary Wysac, appellant's mother, testified that on one occasion, Abundo, after learning that her husband had been having an affair, told her that she was going to "call the police" and tell them that her husband had molested her children, and, "just like that," she would "have him put in jail." Abundo told her that she had "[d]one it before," and would "do it again." And the complainant told her,

6

"All I'm going to do is tell the police that my dad came into the bedroom, . . . put his hands underneath the blanket and my pajamas and rubbed my breasts."

In rebuttal, K. Belloumini, a CAC senior forensic interviewer, testified that, during her interview, the complainant "described an injury on [appellant's] penis."

## Standard of Review

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need

7

to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

We note that, generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. However, the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law and no reasonable trial strategy could justify trial counsel's acts or omissions, regardless of counsel's subjective reasoning. *Id.*

### Ineffective Assistance of Counsel

In his sole issue, appellant argues that his trial counsel's performance was deficient during the guilt phase of trial because counsel (1) failed to ensure that voir dire was recorded; (2) opened the door to an extraneous act during opening argument; (3) failed to make certain objections; and (4) misstated the record during his argument. Appellant further asserts that his trial counsel's performance was deficient during the punishment phase of trial because counsel failed to object to information contained in a penitentiary packet.

### Record of Voir Dire

In regard to appellant's assertion that his trial counsel failed to ensure that voir dire was recorded, we note that a failure to request that a court reporter record trial court proceedings does not per se constitute ineffective assistance of counsel. *Young v. State*, 425 S.W.3d 469, 473 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). When counsel does not request that proceedings be recorded, we will not speculate as to what actually transpired. *See id.* Thus, an appellant must raise an injury resulting from counsel's failure to request transcription. *Wills v. State*, 867 S.W.2d 852, 857 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd). Here, appellant has not raised a specific injury.

### Failure to Object

Appellant next argues that his trial counsel's performance was deficient because counsel failed to object to hearsay testimony, victim impact testimony, and opinion testimony regarding his guilt and the complainant's truthfulness.

To establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling the objection had trial counsel objected. *See Vaughn v. State*, 931 S.W.2d 564, 566–67 (Tex. Crim. App. 1996); *DeLeon v. State*, 322 S.W.3d 375, 381 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd).

## Hearsay

Appellant complains that his trial counsel failed to object to Detective Ochoa's testimony that Abundo told her that she felt like nothing was being done to help her child, no one was listening to her story, and she was "getting the run around." He noted that Ochoa also testified that Abundo had asked her to talk with the complainant because she had been depressed and was cutting herself. Appellant also complains that Officer Ziegelmeyer testified that Abundo was animated and upset when they spoke because she had just learned of the abuse through her daughter's friend and wanted something to be done immediately. He also complains that his trial counsel failed to object to Belloumini's testimony that the complainant had disclosed sexual abuse to her and described the injury to appellant's penis. And appellant notes that the State emphasized this "inadmissible hearsay testimony" in its closing argument, as follows: "You can compare that testimony with State's Exhibit No. 2 and you can think about the most important testimony that [Belloumini] had. She said that [the complainant] indicated what it looked like on [appellant's] penis."

"Hearsay" is an out-of-court statement that is offered in evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). Hearsay is inadmissible except where allowed by statute or rule. TEX. R. EVID. 802. Evidence that meets the definition of hearsay but is nevertheless admissible includes

10

statements regarding a declarant's then existing state of mind, emotion, sensation, or physical condition. TEX. R. EVID. 803(3).

The record shows that the State asked Ziegelmeyer to "describe" Abundo's demeanor, and he responded, "She was rather animated and upset. She was seemed [sic], she just found out about the abuse. Her daughters had told her. In my opinion she was upset and a little bit—she just wanted something done immediately." Ziegelmeyer's own statements of opinion regarding Abundo's demeanor did not constitute hearsay because they did not concern statements Abundo made to prove the truth of the matter asserted. *See* TEX. R. EVID. 801(d) (statement by out-of-court declarant "offered in evidence to prove the truth of the matter asserted in the statement" constitutes hearsay); *Dinkins v. State*, 894 S.W.2d 330, 347 (Tex. Crim. App. 1995) ("An extra-judicial statement or writing which is offered for the purpose of showing what was said rather than for the truth of the matter stated therein does not constitute hearsay.") Similarly, Ochoa's testimony that Abundo had asked her to talk with the complainant, because she was depressed and had been cutting herself, and Ziegelmeyer's testimony that Abundo had told him that she had heard about the abuse from "her other daughter's friend" were not admitted to prove the truth of the matters asserted in the statements. *See* TEX. R. EVID. 801(d); *Dinkins*, 894 S.W.2d at 347.

11

Further, Abundo's statements that she "felt like" nothing was being done, nobody was listening to her, and she was "getting the run around" concerned her then existing state of mind and emotion; thus, they were admissible as exceptions to the hearsay rule. *See* TEX. R. EVID. 803(3); *Martinez v. State*, 17 S.W.3d 677, 688 (Tex. Crim. App. 2000). Not objecting to admissible evidence does not constitute ineffective assistance of counsel. *Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012).

The record further shows that Belloumini testified that the complainant had disclosed sexual abuse and had described an injury on appellant's penis, as follows:

| [State]: | And did she, again without anything [sic], did she or did she not disclose about some sexual abuse? |
|---|---|
| [Belloumini]: | Yes, she did. |

. . . .

| [State]: | Now, when you're talking to [the complainant], did she have a point in time to describe a certain injury on the accused's penis. |
|---|---|
| [Belloumini]: | Yes. |
| [State]: | And without saying what she say? [sic] Did she describe the injury with her hands or anything, draw anything? What did she, without anything she said? [sic] Did she make any physical gestures related to that injury? |
| [Belloumini]: | Yes. |

12

| [State]: | Would you please tell us what you observed her to do. |
|---|---|
| [Belloumini]: | Can I show th[at] it was parallel and a little round was the motion. |
| [State]: | Just for the record when you are motioning, it's to the ground below you? |
| [Belloumini]: | To the ground below me. |

Belloumini was not asked, and she did not offer, any details about the abuse. Rather, she simply testified that the complainant had told her the details. Even if we were to conclude that Belloumini's testimony and hand gesture relating what she "observed" the complainant to describe about appellant's injury constitutes hearsay, appellant has not shown a reasonable probability that but for counsel's failure to object to the testimony and gesture, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The complainant's testimony, which did not constitute hearsay, was in far greater detail regarding the abuse and appellant's injury, and the complainant drew a picture of the scar for the jury. *See Kucel v. State*, 907 S.W.2d 890, 895 (Tex. App.— Houston [1st Dist.] 1995, pet. ref'd); *see e.g., Smith v. State*, No. 04-03-00544-CR, 2005 WL 1230632, at *5 (Tex. App.—San Antonio May 25, 2005, no pet.) (mem. op., not designated for publication) (holding no reasonable probability result of proceeding would have been different where counselor testified complainant had

13

told her details of assault and complainant testified in specific detail); *Curtis v. State*, No. 01-03-00687-CR, 2004 WL 2118487, at *5 (Tex. App.—Houston [1st Dist.] Sept. 23, 2004, pet. ref'd) (mem. op., not designated for publication) (holding no reasonable probability outcome of trial would have been different had counsel objected to hearsay testimony by law enforcement officer regarding sexual assault of child where complainant later testified in "far more detail[]").

In support of his assertion that the outcome of the proceeding would have been different had his trial counsel objected to Belloumini's testimony, appellant relies on *Alvarado v. State*, 775 S.W.2d 851 (Tex. App.—San Antonio 1989, pet. ref'd). In *Alvarado*, the San Antonio Court of Appeals reversed a defendant's conviction for aggravated sexual assault of a child on the ground that he had received ineffective assistance of counsel at trial. *Id.* at 857. There, the defendant's trial counsel had failed to object to the inadmissible testimony of (1) a counselor, regarding the complainant's statements made to her and the assertions of the complainant's brother that the defendant had also sexually abused him; (2) the complainant's mother, regarding the complainant's statements made to the counselor and the mother's own statements made to the defendant's mother and sister; and (3) a doctor, regarding the complainant's statements made to him. *Id.* at 853–55. The court noted that the evidence that the jury was improperly allowed to consider might "easily" be described as "overwhelming." *Id.* at 857. And when

14

the inadmissible evidence was disregarded, the remaining evidence consisted primarily of the testimony of the complainant and her younger brother, which constituted a "very small part" of the record. *Id.* at 855.

Here, unlike in *Alvarado*, Belloumini simply testified that the complainant had disclosed abuse to her, and she did not testify in specific detail about the abuse. Although Belloumini testified, in words and gestures, about what she had "observed" the complainant describe about appellant's injury, the jury was not subjected to a barrage of inadmissible testimony. *See id.* at 857. And the complainant herself testified at length and in specific detail about the assault and the scar, and she drew a picture of the scar for the jury.

We hold that appellant has not shown that his trial counsel's performance, in not objecting to the testimony of Ochoa and Ziegelmeyer, was deficient. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. We further hold that appellant has not shown that but for counsel having not objected to Belloumini's testimony, the result of the proceeding would have been different. *See id.*

*Victim Impact Testimony*

Appellant next complains that his trial counsel failed to object to the following testimony of Abundo during the guilt phase of trial:

[State]:    Did you take any actions related to [the complainant] to help her in any way with this matter, any kind of counseling services?

15

[Abundo]: Yes, I took her [to] therapy.

[State]: Did you notice at this point anything about your daughter, anything that she was doing to herself that caused you concern?

[Abundo]: She . . . started cutting herself.

. . . .

[State]: . . . [W]hen we talk about people cutting themselves, they are intending to do—what did you think it meant that your daughter was doing?

[Abundo]: That she was trying to commit suicide.

. . . .

[State]: And what outlet has your daughter found?

[Abundo]: My daughter now, in order for her to not kill herself or attempt to because the thought goes, she's now saving the lives of other kids. She talks to other kids. She keeps other kids from cutting themselves she's part of what you call it's Rachel's challenge. . . .

The complainant's sister also testified that the complainant had engaged in cutting herself. Appellant argues that because this testimony relates to the psychological impact that the sexual assaults have had on the complainant, it constitutes victim-impact testimony, which was not relevant during the guilt phase of trial.

Outside of the context of homicide cases, victim-impact evidence is generally defined as evidence regarding "the physical or psychological effect of the crime on the victims themselves." *Lane v. State*, 822 S.W.2d 35, 41 (Tex. Crim. App. 1991). Victim-impact testimony is generally irrelevant at the guilt phase of trial because it does not tend to make more or less probable the existence of any

16

fact of consequence at that stage. *Longoria v. State*, 148 S.W.3d 657, 659 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). However, victim-impact testimony can be admissible as a "circumstance of the offense." *Id.* It may be admissible if the testimony "would have a tendency to make more or less probable a fact of consequence at the guilt stage; that is, whether appellant committed the crimes at all." *Id.* at 660.

Here, the evidence of the impact on the complainant and her mother did have a tendency to make more or less probable a fact of consequence at the guilt stage; that is, whether appellant committed the offenses. *See id.* Because the complained-of testimony was admissible to show that the assaults had in fact occurred and rebutted appellant's defensive theory that the complainant fabricated the allegations, the failure of appellant's trial counsel to object to the testimony did not fall below an objective standard of reasonableness. *See id.* (holding counsel's failure to object to victim-impact testimony did not fall below objective standard of reasonableness because testimony regarding complainants' behavior had tendency to make more or less probable a fact of consequence at guilt phase of trial); *see also Cueva v. State*, 339 S.W.3d 839, 881 (Tex. App.—Corpus Christi 2011, pet. ref'd) (holding because victim impact testimony had "a tendency to make more or less probable a fact of consequence at the guilt stage" and would have been admissible, trial counsel's failure to object did not fall below objective standard).

17

Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on this ground.

*Opinion Testimony*

Appellant next argues that his trial counsel's performance was deficient because counsel failed to object to opinion testimony regarding appellant's guilt and the complainant's truthfulness.

It is generally improper for a witness to offer a direct opinion as to the truthfulness of another witness. *See Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997). This type of testimony is inadmissible "because it does more than 'assist the trier of fact to understand the evidence or to determine a fact in issue;' it decides an issue for the jury." *Yount v. State*, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993). "It logically follows that a lay witness is not permitted to offer an opinion that another witness is truthful." *Fisher v. State*, 121 S.W.3d 38, 41 (Tex. App.—San Antonio 2003, pet. ref'd).

Appellant complains of three instances in which he asserts that the trial court admitted improper opinion testimony without objection from his trial counsel. He first complains that Detective Ochoa testified that she told the complainant that she "could not talk to her about what happened to her," but she "wanted her to know that it wasn't her fault and there was nothing she could do to stop it." Appellant asserts that this testimony "clearly left the jury with the impression that Ochoa

18

believed the allegations of sexual assault." He further complains that Detective Jaso testified as follows:

> [State]: Did you ever get any indication in your investigation, ma'am, that [Abundo] and her daughter [the complainant] spent 8 months making up some story? Anything indicating that?
>
> [Jaso]: No.
>
> . . . .
>
> [State]: Based on your training and your total number of years is it unusual for a child victim to be triggered again by seeing the accused again triggered into giving an outcry?
>
> [Jaso]: It's not.

Appellant asserts that Jaso's testimony also constitutes an improper comment on the complainant's truthfulness.

We first note that Detective Jaso's testimony that it is not unusual for a child complainant to be prompted to make an outcry when she sees her assailant was relevant to assist the jury in understanding the complainant's delayed outcry. Appellant does not explain how this testimony about child-complainants in general constitutes an improper comment on the complainant's truthfulness in this case.

However, Jaso's testimony that did not have any indication during her investigation, having watched and heard the CAC interview of the complainant, that Abundo and her daughters had "spent 8 months making up some story" was inadmissible. *See Sandoval v. State*, 409 S.W.3d 259, 291–92 (Tex. App.—Austin 2013, no pet.); *see, e.g., Lewis v. State*, No. 02–11–00112–CR, 2012 WL 858601,

19

at *1 (Tex. App.—Fort Worth Mar. 15, 2012, no pet.) (mem. op., not designated for publication) (holding inadmissible CPS investigator's testimony that she did not "see any signs that [child] was being deceptive in any way," after watching forensic interview conducted at CAC). And Detective Ochoa's testimony that she told the complainant that "it wasn't her fault and there was nothing she could do to stop it" was also inadmissible. *See Sandoval*, 409 S.W.3d at 291–92. Both Jaso and Ochoa essentially expressed their opinions that the complainant was not fabricating her allegations.

Here, the sole issue at trial was the credibility of the complainant, and the above complained-of testimony constituted inadmissible opinions as to her truthfulness. *See Schultz*, 957 S.W.2d at 59; *Yount*, 872 S.W.2d at 711. However, there is nothing in the record explaining trial counsel's strategy for allowing the improper opinion testimony into evidence. *See Lopez*, 343 S.W.3d at 144 (holding silent record as to counsel's reasons for not objecting to inadmissible direct opinion testimony about truthfulness of child complainant does not satisfy *Strickland*). Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on this ground. *See id.*

### Extraneous Act

Appellant next asserts that his trial counsel opened the door to an extraneous act of indecent exposure in his opening statement, as follows:

20

Now, [the complainant] said that [appellant] showed her his penis. That it has a scar on it from a hamster bite, but you will see from the evidence, there are no such scars on [appellant's] penis.

And, during cross examination, counsel asked Detective Jaso whether she had asked appellant whether he had a scar on his penis. After Jaso testified that appellant had denied having any such scar, counsel asked Jaso whether she had any reason to believe that appellant was not telling the truth. She responded, "No, not at that point." The complainant later testified, without objection, that when she was five years old, appellant exposed his penis to her and told her that an animal had bitten him on the top of his penis. She saw a scar, which she described as a "straight line." After the trial court admitted into evidence a photograph of appellant's penis, the complainant testified that it showed the scar that she saw in 2005. And the State emphasized the photograph and the complainant's testimony in its closing argument.

Appellant argues that "there can be no sound strategy" in opening the door and claiming that "there is no mark when there clearly is a mark on [appellant's] penis as shown in State's Exhibit 2" because "[h]oping that the jury does not look at the photo is not a sound strategy." The State concedes that "the visual state of [appellant's] penis (specifically, a bite mark from a hamster—or the lack thereof) was the focus of significant dispute during trial." It agrees that defense counsel's "effort to show that no such mark exists" allowed "for the testimony from [the

21

complainant] regarding an extraneous incident during which [appellant] exposed himself to her when she was five years old." The State asserts, however, that the complained-of evidence was admissible to show the relationship of the parties. It argues that appellant "does not . . . explain what strategy trial counsel could have adopted that would have led to the exclusion of this evidence or nullified it because such extraneous material would have been properly admitted—even over defense counsel's objection." And the clerk's record shows that the State, prior to trial, gave notice of its intent to offer evidence that in October 2005, appellant committed the offense of indecency with a child by exposing his genitals to the complainant.

Evidence of other crimes, wrongs, or bad acts is inadmissible if it is offered to prove the character of a person in order to show action in conformity therewith. TEX. R. EVID. 404(b). Such evidence may be admissible for another purpose, however, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, and rebuttal of a defensive theory. *See id.*; *Bass v. State*, 270 S.W.3d 557, 563 n.7 (Tex. Crim. App. 2008) (noting defense opening statement may "open the door" to admission of extraneous-offense evidence in State's case-in-chief to rebut defensive theories presented in opening statement); *Dennis v. State*, 178 S.W.3d 172, 177 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

22

Notwithstanding rule 404, however, "evidence of other crimes, wrongs, or acts committed by [a] defendant against [a] child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including: (1) the state of mind of the defendant and the child; and (2) the previous and subsequent relationship between the defendant and the child." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b) (Vernon Supp. 2014). And evidence that a defendant has committed a separate offense of indecency with a child "may be admitted . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." *Id.* art. 38.37, § 2(b) (enumerating types of separate offenses deemed admissible). Thus, the complained-of evidence is admissible under article 38.37; however, such evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Martin v. State*, 176 S.W.3d 887, 895 (Tex. App.—Fort Worth 2005, no pet.).

Appellant complains that his trial counsel failed to raise a rule 403 objection. The relevant factors in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include: (1) the strength of the evidence in making a fact of consequence more or less probable, (2) the potential of the extraneous-offense evidence to impress the jury in some irrational but indelible way, (3) the amount of time the proponent needed to develop the evidence, and (4)

the force of the proponent's need for this evidence to prove a fact of consequence. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

Here, the first factor weighs in favor of admissibility because the evidence that appellant had exposed his penis to the complainant prior to the assault was probative of his state of mind and relationship with the complainant and made more probable that he had the intent and motive to sexually assault her. *See Montgomery v. State*, 810 S.W.2d 372, 381 (Tex. Crim. App. 1990) (holding evidence defendant had frequently exposed himself to complainants on prior occasions probative of his "manner" with them and not unfairly prejudicial); *Burke v. State*, 371 S.W.3d 252, 257–58 (Tex. App.—Houston [1st Dist.] 2011, pet. dism'd) (holding evidence of prior sexual assaults probative of relationship and not unfairly prejudicial).

The second and third factors also weigh in favor of admissibility. As the State noted, "the visual state of [appellant's] penis . . . was the focus of significant dispute during trial." Although the State spent some time developing this evidence, the jury could not have been distracted from the charged offense because the complained-of evidence relates to the charged offense. *See State v. Mechler*, 153 S.W.3d 435, 441 (Tex. Crim. App. 2005). Also, although the contested evidence was prejudicial to appellant, it was not unfairly prejudicial because of the fact that it relates to the charged offense. *See id.* at 440–41. Rule 403 does not

require exclusion of evidence simply because it creates prejudice; rather, the prejudice must be "unfair." *Id.* at 440. "Unfair prejudice" refers only to the tendency of relevant evidence to "tempt the jury into finding guilt on grounds apart from proof of the offense charged." *Id.* Because the complained-of evidence relates to the charged offense, it did not have great potential to impress the jury in an irrational way. *See id.* at 441.

Finally, the State's need for the contested evidence was significant. The complainant did not make an outcry until April 2012, over a year after the sexual assaults occurred, there is no physical evidence, no other witnesses supported her testimony, and the State had a strong need to counter appellant's theory that the complainant had fabricated the allegations.

In sum, the rule 403 factors weigh in favor of admissibility, and the trial court would not have committed error in overruling a rule 403 objection to the extraneous-offense evidence. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004); *Burke*, 371 S.W.3d at 258. Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on this ground.

### Closing Argument

Appellant next argues that his trial counsel's performance was deficient because counsel "failed to object to the State's misstatement of the facts during closing argument" and counsel "repeated the error" in his own closing argument.

During closing argument, the State asserted to the jury that the complainant "told you [appellant] put his fingers in her more than 15 times." The record shows that the complainant actually testified that appellant did this "about 5 times." Defense counsel, during his closing, then repeated the error, stating, "Now, [the complainant] testified that the touching occurred 15 times throughout her life." Appellant asserts that there "could be no legitimate trial strategy in failing to object to the prosecutor's misstatement alleging 10 additional acts of misconduct that were not contained in the record and then repeating the same misstatement." The State asserts that the complainant testified that appellant "inserted his fingers into her 'about 5 times' in 2005" and "put his fingers in her vagina several years later beginning in 2010 through 2011." And thus, "even if both the prosecution and the defense meant to say 5 instead of 15, there is evidence in the record that this sexual conduct occurred multiple times over several years."

In support of his position, appellant relies on *Aldrich v. State*, 296 S.W.3d 225 (Tex. App.—Fort Worth 2009, pet. ref'd). In *Aldrich*, the court concluded that the record reflected "numerous inaccurate statements" by defense counsel. *Id.* at 254. For instance, counsel mistakenly recited that the defendant's blood-alcohol concentration was 0.17, rather than 0.07, and he stated in a hypothetical that the retest of the defendant's blood sample revealed a blood-alcohol concentration of 0.40, rather than .04. *Id.* Counsel also referred to the defendant, the prosecutor,

26

and witnesses by incorrect names, and he misidentified the officer who had administered field sobriety tests to the defendant. *Id.* The court noted that "[t]hese examples [were] not exhaustive but merely a sampling of the inaccurate factual statements made by defense counsel on the record." *Id.* And the court held that defense counsel's misstatements of fact during trial fell below an objective standard of reasonableness, "could not be part of any trial strategy," and satisfied the first prong of *Strickland. Id.*

Here, there was no legitimate trial strategy for allowing the State to allege ten additional acts of sexual assault that were not supported by the record and the repeating of the same misstatement. Unlike in *Aldrich*, however, the record before us does not reflect "numerous inaccurate statements" by defense counsel. *See id.* Generally, isolated instances, as here, reflecting errors of commission or omission do not constitute ineffective assistance. *Ex parte Welborn*, 785 S.W.2d 391, 393 (Tex. Crim. App. 1990). Accordingly, we hold that appellant has not shown that his trial counsel's performance was deficient on this ground. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999) ("An appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation, especially when the record provides no discernible explanation of the motivation

27

behind counsel's actions—whether those actions were of strategic design or the result of negligent conduct.").

***Punishment Phase***

Finally, appellant argues that his trial counsel's performance was deficient during the punishment phase of trial because counsel did not object to State's exhibits 4 through 7, which are appellant's penitentiary packets and records of prior convictions for three prior offenses of theft and the offense of possession of a controlled substance. Appellant asserts that a Pre-Sentence Investigation report in State's exhibit 7 contains a list of ten offenses for which there was no disposition, four offenses that were "rejected," and three offenses that were "dismissed." And these offenses constitute "17 prior criminal allegations that the jury should not have been able to consider during their punishment deliberations."

Effective September 1, 1993, the legislature amended the Texas Code of Criminal Procedure to allow the admission of unadjudicated, extraneous offenses at the punishment phase of noncapital cases:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible,

28

regardless of whether he has previously been charged with or finally convicted of the crime or act.

TEX. CRIM. PROC. CODE ANN. art. 37.07(a)(1) (Vernon Supp. 2014). Section 3(a)(1) "does not prohibit" a sentencing entity from "considering extraneous misconduct evidence in assessing punishment just because the extraneous misconduct has not been shown to have been committed by the defendant beyond a reasonable doubt, if that extraneous misconduct is contained in a PSI." *Smith v. State*, 227 S.W.3d 753, 763 (Tex. Crim. App. 2007).

Here, the record shows that the complained-of exhibits were admitted under a stipulation between the State and appellant as follows:

| [State]: | Your Honor, we have made an agreement with defense counsel. We have pen packets for Exhibits Nos. 4, 5, 6, and 7 and we've discussed with defense counsel and I believe we have an agreement to cut down on some court time and witnesses we have a stipulation that those are in fact defendant's pen packets that we will only discuss those matters related to the extraneous we previously filed excluding the personal events with the girls. We won't offer any other criminal acts. |
|---|---|
| [Appellant's Counsel]: | We are [in] agreement. |

Again, we note that the record is silent as to trial counsel's reasons or strategy concerning the evidence at issue and the stipulation that he reached with the State. Accordingly, we hold that appellant has not overcome the strong presumption that

29

the decisions of trial counsel fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; *Bone v. State*, 77 S.W.3d 828, 833, 836–37 (Tex. Crim. App. 2002).

Considering the totality of trial counsel's representation to determine his effectiveness, we hold that appellant has not successfully defeated the strong presumption that the decisions of trial counsel fell within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687–88, 694, 104 S. Ct. at 2064, 2068; *Lopez*, 343 S.W.3d at 144. Accordingly, we overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

30

ichael myseck
CJ # 0869233
chuel unit
4 Fm 2054
tessee colony, TX 75886

Court of criminal
P.O. Box 12308
Austin, TX 78711